MAYER BROWN LLP
Anthony J. Weibell (SBN 238850)
aweibell@mayerbrown.com
Two Palo Alto Square, Suite 300
Palo Alto, CA 94306
Telephone: (650) 331-2030

Archis A. Parasharami (SBN 321661)
aparasharami@mayerbrown.com
575 Market St # 2500
San Francisco, CA 94105
Telephone: (202) 263-3328

Sophia M. Mancall-Bitel (SBN 337002)
smancall-bitel@mayerbrown.com
333 South Grand Avenue, 47th Floor
Los Angeles, CA 90071-1503
Telephone: (213) 229-5137

Daniel E. Jones (*pro hac vice* to be filed)
djones@mayerbrown.com
1999 K Street, N.W.
Washington, D.C. 20006
Telephone: (202) 263-3860

*Attorneys for Defendant*
*ALLY FINANCIAL INC.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MICHAEL MAHONEY, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ALLY FINANCIAL INC.,<br><br>Defendant. | Case No. 4:24-cv-2392-HSG<br><br>Honorable Haywood S. Gilliam, Jr.<br><br>**DEFENDANT ALLY FINANCIAL INC.'S MOTION TO DISMISS OR TO TRANSFER**<br><br>Date: December 5, 2024<br>Time: 2:00 p.m.<br>Location: Courtroom 2, 4th Floor<br>Trial Date: None<br>Complaint Filed: April 22, 2024 |

## TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ ii

NOTICE OF MOTION & MOTION ........ 1

RELIEF REQUESTED ........ 1

STATEMENT OF ISSUES TO BE DECIDED ........ 1

MEMORANDUM OF POINTS AND AUTHORITIES ........ 1

BACKGROUND ........ 3

LEGAL STANDARDS ........ 6

ARGUMENT ........ 7

I. The Court Lacks Personal Jurisdiction Over Ally. ........ 7

  A. Ally Is Not Subject To General Jurisdiction In California. ........ 7

  B. Ally Is Not Subject To Specific Jurisdiction In California. ........ 8

    1. Ally did not purposefully direct any relevant conduct towards California. ........ 9

    2. Mahoney's claims do not arise out of or relate to Ally's alleged forum-related activities. ........ 13

II. In The Alternative, The Court Should Transfer This Action Based On The Contractual Forum-Selection Clause. ........ 15

CONCLUSION ........ 18

# TABLE OF AUTHORITIES

**Cases**

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796 (7th Cir. 2014) ... 11

*AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201 (9th Cir. 2020) ... 10, 11, 12

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ... 6

*Atl. Marine Const. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49 (2013) ... 3, 6, 16, 17

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064 (9th Cir. 2017) ... 9, 13

*be2 LLC v. Ivanov*, 642 F.3d 555 (7th Cir. 2011) ... 11

*Biswas v. HR Value Grp., LLC*, 2002 WL 31261160 (N.D. Cal. Oct. 4, 2002) ... 15

*BNSF Railway Co. v. Tyrell*, 581 U.S. 402 (2017) ... 8

*In re Boon Glob. Ltd.*, 923 F.3d 643 (9th Cir. 2019) ... 10

*Briskin v. Shopify, Inc.*, 87 F.4th 404 (9th Cir. 2023) ... 11

*Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255 (2017) ... 13

*Calder v. Jones*, 465 U.S. 783 (1984) ... 10

*Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585 (1991) ... 16

*Carroll v. J.M. Smucker Co.*, 2023 WL 4053796 (N.D. Cal. June 15, 2023) ... 2, 12, 14

*Chinitz v. Ally Bank*, No. 18-cv-4329, Dkt. No. 23 (N.D. Cal. Jan. 24, 2019) ... 3, 16, 18

*CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066 (9th Cir. 2011) ... 8

*Daimler AG v. Bauman*, 571 U.S. 117 (2014) ... 7, 8

*Diamond Ranch Acad., Inc. v. Filer*,
2016 WL 633351 (D. Utah Feb. 17, 2016) .......... 17

*Digecor, Inc. v. E.Digital Corp.*,
2009 WL 706888 (D. Utah Mar. 13, 2009) .......... 17

*Encompass Holdings, Inc. v. Daly*,
2010 WL 4502205 (N.D. Cal. Nov. 2, 2010) .......... 6

*Ford Motor Co. v. Montana Eighth Judicial District Court*,
592 U.S. 351 (2021) .......... 7, 13, 14, 15

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011) .......... 7

*Heinz v. Amazon.com, Inc.*,
2023 WL 4466904 (E.D. Cal. July 11, 2023) .......... 7, 16, 17

*Herbal Brands v. Photoplaza, Inc.*,
72 F.4th 1085 (9th Cir. 2023) .......... 14

*LA Printex v. M & A Imports Ltd.*,
2013 WL 12133690 (C.D. Cal. July 19, 2013) .......... 6

*Lee v. Fisher*,
70 F.4th 1129 (9th Cir. 2023) (en banc) .......... 7, 16, 17

*Licea v. Caraway Home Inc.*,
655 F. Supp. 3d 954 (C.D. Cal. Feb. 9, 2023) .......... 2

*Massie v. Gen. Motors Co.*,
2021 WL 2142728 (E.D. Cal. May 26, 2021) .......... *passim*

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
647 F.3d 1218 (9th Cir. 2011) .......... 8, 9, 11

*McGibney v. Retzlaff*,
2015 WL 3807671 (N.D. Cal. June 18, 2015) .......... 12

*Menken v. Emm*,
503 F.3d 1050 (9th Cir. 2007) .......... 14

*Microsoft Corp. v. Hagen*,
2010 WL 11527312 (E.D. Cal. Aug. 30, 2010) .......... 15

*Mikulsky v. Noom, Inc.*,
682 F. Supp. 3d 855 (S.D. Cal. 2023) .......... *passim*

*Pebble Beach Co. v. Caddy*,
453 F.3d 1151 (9th Cir. 2006) .......... 9, 10

*Perkins v. Benguet Consolidated Mining Co.*,
342 U.S. 437 (1952) .......... 8

*Picot v. Weston*,
780 F.3d 1206 (9th Cir. 2015) .......... 9

*Ranza v. Nike, Inc.*,
793 F.3d 1059 (9th Cir. 2015) .......... 6, 7, 8

*RMA Ventures v. SunAmerica Life Ins.*,
2007 WL 4206952 (D. Utah Nov. 26, 2007) .......... 17

*Rosenthal v. Bloomingdales.com, LLC*,
101 F.4th 90 (1st Cir. 2024) .......... 12

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004) .......... 9

*Soundvision Techs., LLC v. Templeton Group Ltd.*,
929 F. Supp. 2d 1174 (D. Utah 2013) .......... 17

*Southard v. Kipper Tool Co.*,
2023 WL 6959145 (N.D. Cal. Oct. 19, 2023) .......... 15

*Star Fabrics, Inc. v. Ross Stores, Inc.*,
2017 WL 10439691 (C.D. Cal. Nov. 20, 2017) .......... 15

*Sun v. Advanced China Healthcare, Inc.*,
901 F.3d 1081 (9th Cir. 2018) .......... 7, 16, 17, 18

*Swartz v. KPMG LLP*,
476 F.3d 756 (9th Cir. 2007) .......... 6, 10

*Walden v. Fiore*,
571 U.S. 277 (2014) .......... 9, 12

*Williams v. Yamaha Motor Co. Ltd.*,
851 F.3d 1015 (9th Cir. 2017) .......... 7

**Statutes and Rules**

28 U.S.C. § 1404(a) .......... *passim*

Fed. R. Civ. P. 12(b)(2) .......... 1, 6, 10

Cal. Penal Code § 631(a) .......... 4

Cal. Penal Code § 632(a) .......... 4

## NOTICE OF MOTION & MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT, on December 5, 2024, at 2:00 pm, before the Honorable Haywood S. Gilliam, Jr., defendant Ally Financial Inc. will and hereby does move under Federal Rule of Civil Procedure 12(b)(2) to dismiss the complaint for lack of personal jurisdiction, or, in the alternative, will and hereby does move under 28 U.S.C. § 1404(a) to transfer this case to the United States District Court for the District of Utah.

## RELIEF REQUESTED

An order dismissing the complaint for lack of personal jurisdiction over Ally, or, in the alternative, transferring the case to the District of Utah.

## STATEMENT OF ISSUES TO BE DECIDED

1. Whether plaintiff's claims against Ally should be dismissed for lack of personal jurisdiction.

2. Whether, in the alternative, the lawsuit should be transferred to the District of Utah because of plaintiff's agreement to a forum-selection clause requiring him to bring "any lawsuit regarding [his] account" in a Utah court.

## MEMORANDUM OF POINTS AND AUTHORITIES

Ally operates a website that is accessible throughout the United States (and beyond), including by California residents. But that fact—which is true of nearly every website—does not mean that the Due Process Clause allows personal jurisdiction over Ally everywhere in the country. And because plaintiff Michael Mahoney does not—and cannot—allege that Ally's website or any conduct ***by Ally*** relevant to this lawsuit is ***targeted at California in particular***, the Court should dismiss this case for lack of personal jurisdiction.

Mahoney alleges that Ally's website uses third-party session replay and Meta Pixel technologies and that these third-party service providers can obtain personal information from visitors to Ally's website. Mahoney's allegations are without merit,

but more important for present purposes, they are brought in the wrong forum. The complaint correctly acknowledges that Ally is neither incorporated nor has its principal place of business in California. Ally therefore is not subject to general personal jurisdiction in this State.

As for specific jurisdiction, Mahoney must show that Ally's suit-related conduct has specifically targeted California. But his allegations are insufficient to show that the operation and configuration of Ally's website, including the use of third-party service providers, in fact is expressly aimed at California in particular. Mahoney does not, and cannot, allege that Ally designed, developed, operated, or configured Ally's website in California, or that Ally engaged in any conduct in California related to the allegations in the complaint about the operation of Ally's website. Rather, the *only* connection between this case and California is that Mahoney himself happens to be a California resident who accessed Ally's website from California. That is not enough under Ninth Circuit precedent. Indeed, other California courts have dismissed similar types of session replay and Meta Pixel claims against website operators for lack of personal jurisdiction because "operation of broadly accessible websites does not constitute the type of minimum contacts with the forum needed for specific personal jurisdiction." *Massie v. Gen. Motors Co.*, 2021 WL 2142728, at *6 (E.D. Cal. May 26, 2021); *see also*, *e.g.*, *Carroll v. J.M. Smucker Co.*, 2023 WL 4053796, at *3-5 (N.D. Cal. June 15, 2023); *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 866-68 (S.D. Cal. 2023); *Licea v. Caraway Home Inc.*, 655 F. Supp. 3d 954, 966-71 (C.D. Cal. Feb. 9, 2023). This Court should do the same.

In the alternative, the Court should transfer the action under 28 U.S.C. § 1404(a) to the U.S. District Court for the District of Utah, which is an appropriate venue. Mahoney expressly alleges that he opened an Ally banking account and used Ally's online banking services. Compl. ¶ 3. In doing so, he necessarily agreed to the Ally Bank Deposit Agreement and Disclosures, which at all relevant times has contained a forum-selection clause requiring an accountholder to bring "***[a]ny***

***lawsuit*** regarding your account" in "a proper court in the State of Utah." Decl. of Jacqueline Lemma ¶¶ 7-8 & Ex. 2 § I.D (emphasis added). That choice is a sensible one, because Ally Bank, the subsidiary of Ally Financial that offers online banking services, is headquartered in Utah. *Id.* ¶ 3.

The Supreme Court has held that transfer under Section 1404(a) is the proper "mechanism for enforcement of forum-selection clauses" that, like this one, require the plaintiff to bring litigation in a different federal district court. *Atl. Marine Const. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 59 (2013). And the Court further emphasized that "proper application of § 1404(a) requires that a forum-selection clause be given ***controlling weight*** in all but the most exceptional cases." *Id.* at 59-60 (emphasis added; quotation marks omitted). Indeed, Judge Donato has previously enforced Ally Bank's forum-selection clause and transferred a case to the District of Utah under that standard. *See* Order, *Chinitz v. Ally Bank*, No. 18-cv-4329, Dkt. No. 23 (N.D. Cal. Jan. 24, 2019). For the reasons detailed below, this case presents no exceptional circumstances precluding enforcement of Mahoney's agreement to litigate in a Utah forum, and the Court should therefore transfer the case pursuant to the forum-selection clause if it does not dismiss the case for lack of personal jurisdiction.

## BACKGROUND

Mahoney alleges that Ally partners with four "session replay providers" and uses the Meta Pixel on its website, ally.com, and that those technologies enable those third-party service providers to obtain certain personal information from visitors to Ally's website. Compl. ¶¶ 2, 26-27, 32-78. According to the complaint, Mahoney is a California resident who visited the Ally website around November 2023 and December 2023 while located in California. *Id.* ¶¶ 3, 6. Mahoney alleges that his personal information was captured during those website visits when he "searched for and browsed financial information, *opened an Ally account*, and *used Ally's online financial services* (i.e. online banking)." *Id.* ¶ 3 (emphasis added). Based on these

allegations, Mahoney asserts claims against Ally for violations of Sections 631(a) and 632(a) of the California Invasion of Privacy Act (CIPA), Cal. Penal Code §§ 631(a), 632(a). *See id.* ¶¶ 108-133.

Mahoney acknowledges (Compl. ¶ 4) that Ally is incorporated in Delaware with its principal place of business in Michigan. *See* Decl. of Carrie Sumlin ¶ 3. Ally Bank, the wholly-owned subsidiary of Ally that offers online banking services and other financial services nationwide, is incorporated in Delaware with its principal place of business in Utah. Lemma Decl. ¶ 3. Ally Bank is an online-only bank and does not have physical branches, either in California or any other state. *Id.* Ally does not market specifically to California; Ally's advertising (including online advertising) is nationwide. Sumlin Decl. ¶ 11.

Mahoney does not allege that any of Ally's actions or conduct concerning the operation or configuration of its website or the implementation and configuration of third-party session replay and Meta Pixel technologies occurred in or was directed at California. Nor could he, as the team responsible for Ally's operation of the ally.com website and the use of data analytics software (including session replay) and the Meta Pixel is located primarily in North Carolina and Michigan. Sumlin Decl. ¶¶ 4, 8. Any decisions about the configuration and use of data analytics and Meta Pixel technologies were made by Ally employees in those States, not in California. *Id.* ¶ 7. Within the United States, no geographic criteria affect how Ally employs data analytics or Meta Pixel technologies. *Id.* ¶¶ 5-6. The Ally website is accessible nationwide and does not target any particular state or region within the United States. *Id.* ¶ 9.

According to the complaint, Mahoney opened an Ally account and used Ally's online banking services during his visits to Ally's website in November and December 2023. Compl. ¶ 3. The complaint neglects to mention, however, that Ally bank account holders are required to agree to the Ally Bank Deposit Agreement and Disclosures to open deposit accounts such as checking and savings accounts. In

November and December 2023, to complete the process of opening an account online, a consumer opening a deposit account was presented with a link to the full text of the "Ally Bank Deposit Agreement" and required to check a box next to an acknowledgment stating that "**[b]y checking this box, you acknowledge that** . . . [y]ou've received and are able to view the Ally Bank Deposit Agreement . . . and understand that [its] terms will govern your accounts once they are opened." Lemma Decl. ¶¶ 4-6 & Ex. 1.

For many years, including during November and December 2023—the time frame when the complaint suggests Mahoney opened an account—the Deposit Agreement has included a forum-selection clause requiring disputes to be brought in Utah. Lemma Decl. ¶¶ 7-8.[1] For example, the version of the Deposit Agreement in effect in November and December of 2023 states that "Any lawsuit regarding your account must be brought in a proper court in the State of Utah." *Id.* Ex. 2 § I.D. In a later section on "Conflicts" and "Legal Disputes," the Deposit Agreement again reminds accountholders of their agreement to litigate in Utah: "Remember, any lawsuit regarding your account must be brought in a proper court in the State of Utah, where we're headquartered." *Id.* § IX.C.[2]

---

[1] Despite repeated requests from Ally's counsel to provide additional information sufficient to identify the "Michael Mahoney" that is the plaintiff in this case, Mahoney's counsel have refused to provide any additional information about their client. Regardless, anyone who opened a deposit account in November or December 2023, as Mahoney alleges doing, was required to agree to the Ally Bank Deposit Agreement and Disclosures. Lemma Decl. ¶¶ 4-5. In addition, the Ally Bank deposit agreement has had a Utah forum-selection clause for over 17 years, since May 2007. *Id.* ¶ 8.

[2] Ally Bank customers also agree to an Online Banking Services Agreement. *See* https://www.ally.com/content/dam/pdf/bank/ally-bank-obsa.pdf. The forum-selection clause in the Deposit Agreement and Disclosures controls for purposes of this transfer motion, however. The Online Banking Services Agreement provides that "[i]f this Agreement conflicts with any other agreements related to your Eligible Account or Online Banking Service, or the other agreements include terms that are not addressed in this Agreement, then the other agreements will control and take precedence, unless this Agreement specifically states otherwise." *Id.* § I.B. It further provides that "[a]dditional provisions of other agreements regarding your Eligible

**LEGAL STANDARDS**

A defendant may move for dismissal under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. In opposing such a motion, "the plaintiff bears the burden of establishing that jurisdiction is proper." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015) (citation omitted). Allegations to support the assertion of personal jurisdiction—no less than allegations to state a claim—"must comport with the pleading standard as clarified in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)" to survive dismissal. *LA Printex v. M & A Imports Ltd.*, 2013 WL 12133690, at *1 (C.D. Cal. July 19, 2013) (citations omitted). Thus, "mere 'bare bones' assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's pleading burden" to avoid dismissal for lack of personal jurisdiction under Rule 12(b)(2). *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007). Moreover, "[t]he mere allegations of a complaint, when contradicted by affidavits, are not enough to confer personal jurisdiction over a non-resident defendant." *Encompass Holdings, Inc. v. Daly*, 2010 WL 4502205, at *3 (N.D. Cal. Nov. 2, 2010) (quoting *Chem Lab Prod., Inc. v. Stepanek*, 554 F.2d 371, 372 (9th Cir. 1977)).

In addition, under 28 U.S.C. § 1404(a), "[f]or the convenience of the parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." When, as here, a defendant moves for section 1404(a) transfer based on a contractual forum-selection clause, the plaintiff's "choice of forum merits ***no weight***" and the court should "not consider arguments about the parties' private interests," such as convenience for the parties or for witnesses, or access to documents and other sources of proof. *Atlantic Marine*, 571 U.S. at 62-63 & n.6 (emphasis added). Instead, "a valid forum-selection clause should be given controlling weight in all but the most exceptional cases," and

---

Account or Online Banking Service that do not appear in this Agreement ***will continue to apply***." *Id.* (emphasis added).

the party opposing transfer "bear[s] the burden of showing that public-interest factors overwhelmingly disfavor a transfer." *Id.* at 63, 67 (quotation marks and alterations omitted); *accord*, *e.g.*, *Lee v. Fisher*, 70 F.4th 1129, 1143 (9th Cir. 2023) (en banc); *Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1088 (9th Cir. 2018); *Heinz v. Amazon.com, Inc.*, 2023 WL 4466904, at *1-2 (E.D. Cal. July 11, 2023).

## ARGUMENT

### I. The Court Lacks Personal Jurisdiction Over Ally.

There are two forms of personal jurisdiction: (i) "general jurisdiction," or all-purpose jurisdiction, which applies where a defendant is so "at home" in the forum that a court may adjudicate any claims against the defendant arising from anywhere in the world; and (ii) "specific jurisdiction," which allows a court to adjudicate claims that arise out of or relate to the defendant's suit-related contacts with the forum state. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Neither form of personal jurisdiction over Ally exists here.

#### A. Ally Is Not Subject To General Jurisdiction In California.

"A state court may exercise general jurisdiction only when a defendant is 'essentially at home' in the State." *Ford Motor Co. v. Montana Eighth Judicial District Court*, 592 U.S. 351, 358 (2021) (citing *Goodyear*, 564 U.S. at 919); *Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1020 (9th Cir. 2017) (same). "A corporation's 'continuous activity of some sorts within a state is generally not enough to support the demand that the corporation be amenable to suits unrelated to that activity." *Id.* Rather, the paradigmatic locations for general jurisdiction over a corporation are the corporation's "***place of incorporation*** and ***principal place of business***." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (emphasis added); *accord Ranza v. Nike, Inc.*, 793 F.3d 1059, 1069 (9th Cir. 2015).

Here, Mahoney admits that Ally is a Delaware corporation with its principal place of business in Detroit, Michigan. Compl. ¶ 4; *see also* Sumlin Decl. ¶ 3. Mahoney does not, and cannot, allege that this is an "exceptional" case in which

general jurisdiction is nevertheless present. *Ranza*, 793 F.3d at 1069-70.[3] Indeed, it appears that the complaint alleges only specific jurisdiction. *See* Compl. ¶ 6; *see also Massie*, 2021 WL 2142728, at *3 (noting that "Plaintiffs do not contend general jurisdiction applies here").

For good reason: the Supreme Court has expressly rejected "the exercise of general jurisdiction in every State in which a corporation 'engages in a substantial, continuous, and systematic course of business,'" holding that "[t]hat formulation . . . is unacceptably grasping." *Daimler*, 571 U.S. at 138 (citation omitted). Mahoney's allegations that Ally owns and operates a website accessed by California residents (Compl. ¶¶ 1, 4, 6) are therefore not enough to establish general jurisdiction. *See, e.g.*, *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1225 (9th Cir. 2011) (holding that the purchase and sale of products in the forum state, maintenance of business relationships in the forum, and operation of a "'highly interactive' website" accessible to forum residents are insufficient to support general jurisdiction).[4]

Put simply, "a corporation that operates in many places can scarcely be deemed at home in all of them.'" *Daimler*, 571 U.S. at 139 n.20. Mahoney has not established that Ally is subject to general jurisdiction in California.

### B. Ally Is Not Subject To Specific Jurisdiction In California.

For specific jurisdiction to exist, "the ***defendant's*** suit-related conduct must

---

[3] The Supreme Court has found only one example of an "exceptional case" where general jurisdiction is appropriate in a forum that is not the defendant's place of incorporation or principal place of business. In *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437 (1952), the defendant's usual home (the Philippines) had been invaded and occupied during World War II, and its president thereafter directed all corporate activity from Ohio, making Ohio the company's "principal, if temporary, place of business," *Daimler*, 571 U.S. at 130, and, "given the wartime circumstances," a "surrogate for the place of incorporation or head office," *id.* at 130 n.8 (quotation marks omitted); *accord BNSF Railway Co. v. Tyrell*, 581 U.S. 402, 413 (2017).

[4] *See also, e.g.*, *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1075-76 (9th Cir. 2011) ("If the maintenance of an interactive website were sufficient to support general jurisdiction in every forum in which users interacted with the website, the eventual demise of all restrictions on the personal jurisdiction of state courts would be the inevitable result.").

create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (emphasis added); *see also*, *e.g.*, *Picot v. Weston*, 780 F.3d 1206, 1215 (9th Cir. 2015). The Ninth Circuit applies a three-part test to determine whether a court has specific jurisdiction over a defendant: (1) the non-resident defendant must, for claims sounding in tort, purposefully direct its activities toward the forum; (2) the plaintiff's claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must be reasonable. *See Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017). Mahoney bears the burden of establishing the first two prongs of this test. *See id.*; *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).

Mahoney does not, and cannot, meet his burden to establish specific personal jurisdiction.

*1. Ally did not purposefully direct any relevant conduct towards California.*

Depending on whether the claims alleged sound in contract or tort, a plaintiff may satisfy the first element of the Ninth Circuit's test by demonstrating that the defendant "has either (1) 'purposefully availed' [itself] of the privilege of conducting activities in the forum, or (2) 'purposefully directed' [its] activities toward the forum." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006); *Schwarzenegger*, 374 F.3d at 802 (explaining that, though courts "often use the phrase 'purposeful availment,' in shorthand fashion, . . . availment and direction are, in fact, two distinct concepts"). Because Mahoney's claims sound in tort based on internet-related conduct, the purposeful direction test applies here. *See*, *e.g.*, *Axiom Foods*, 874 F.3d at 1069; *Mavrix*, 647 F.3d at 1228; *see also, e.g.*, *Mikulski*, 682 F. Supp. 3d at 866 (applying the purposeful-direction test to session replay-based claims under CIPA); *Massie*, 2021 WL 2142728, at *4 (same).

Mahoney ignores this well-established distinction, alleging that this Court has personal jurisdiction because "Defendant has purposefully availed itself of the laws

and benefits of doing business in California." Compl. ¶ 6. But that allegation is based on the wrong legal framework: the law is clear that purposeful direction, not purposeful availment, applies here.[5]

To establish purposeful direction, Mahoney must satisfy the *Calder* effects test: "[T]he defendant must have (1) committed an intentional act, which was (2) ***expressly aimed*** at the forum state, and (3) caused harm, the brunt of which is suffered and which the defendant knows is likely to be suffered in the forum state." *Pebble Beach Co.*, 453 F.3d at 1155 (emphasis added); *Calder v. Jones*, 465 U.S. 783 (1984). When, as here, the plaintiff's claims are based on his use of the defendant's website, the second prong—whether the defendant expressly aimed its intentional conduct at the forum state—is often the determinative factor. *See, e.g.*, *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1209 (9th Cir. 2020); *Mikulsky*, 682 F. Supp. 3d at 866-68; *Massie*, 2021 WL 2142728, at *4, *6-7.

Here, Mahoney cannot establish that Ally's alleged intentional acts—the use and configuration of session replay software and the Meta Pixel technology on Ally's website (Compl. ¶¶ 32-78)—were expressly aimed at California. Ally's website is accessible throughout the United States, not just California. Sumlin Decl. ¶ 9. Nor do any geographic criteria affect the operation of session replay or Meta Pixel technologies on Ally's website within the United States. *Id.* ¶¶ 5-6. Ally's use of those technologies is for improving its website's design and user experience nationwide, not based on any visitor's geographic location. Ally also does not run advertising or marketing campaigns limited to California or any other particular State or region (rather than marketing to customers or potential customers nationwide). *Id.* ¶ 10. And the Ally team responsible for operating Ally's website—including implementing

---

[5] In all events, a "'bare bones' assertion[]" like this one cannot "satisfy a plaintiff's pleading burden" under Rule 12(b)(2). *Swartz*, 476 F.3d at 766; *In re Boon Glob. Ltd.*, 923 F.3d 643, 650 (9th Cir. 2019) (stating that a plaintiff "cannot simply rest on the bare allegations of its complaint" to establish personal jurisdiction).

and configuring session replay and Meta Pixel technologies—is located primarily in North Carolina and Michigan. *Id.* ¶¶ 4, 8.

"Without facts showing [Ally] specifically targeted California, the operation of an internationally accessible website is insufficient to serve as a ground for personal jurisdiction." *Massie*, 2021 WL 2142728, at *4 (California lacked specific jurisdiction over website operator for session-replay based CIPA claims); *accord Mikulsky*, 682 F. Supp. 3d at 867-68 (same). The principles articulated by the Ninth Circuit in *AMA Multimedia* control here. The court held that the defendant did not expressly aim its broadly accessible website at the United States (the relevant forum for purposes of the jurisdictional analysis in that case) because, like Ally's website here, the subject-matter and operation of the website "lack[ed] a forum specific focus." 970 F.3d at 1210. Moreover, as here, the defendant did not have an online advertising structure designed to market specifically to forum residents. *Id.* at 1212. These characteristics distinguished *Mavrix*, which involved a website devoted to the "'California-centered celebrity and entertainment industries'" that included advertisements "targeting California residents." *Id.* at 1210-11 (quoting *Mavrix*, 647 F.3d at 1230).[6]

In other words, the mere interactivity of Ally's website is not enough. As the Seventh Circuit has put it, "[t]he interactivity of a website is . . . a poor proxy for adequate in-state contacts" and "should not open a defendant up to personal jurisdiction in every spot on the planet where that [] website is accessible." *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 803 (7th Cir. 2014); *be2 LLC v. Ivanov*, 642 F.3d 555, 559 (7th Cir. 2011) ("If the defendant merely operates a website, even a highly interactive website, that is accessible from, but does not target, the forum state, then the defendant may not be haled into court

[6] A Ninth Circuit panel also recently held that the operator of a back-end online payment platform used nationwide did not expressly aim its conduct at California. *See Briskin v. Shopify, Inc.*, 87 F.4th 404 (9th Cir. 2023). The Ninth Circuit subsequently agreed to hear the case en banc, vacating the panel opinion, *see* 101 F.4th 706 (9th Cir. May 14, 2024), and the en banc court has not yet issued its decision.

in that state without offending the Constitution."); *see also*, *e.g.*, *McGibney v. Retzlaff*, 2015 WL 3807671, at *4 (N.D. Cal. June 18, 2015) (citing *Advanced Tactical* in holding that specific jurisdiction was lacking where "all of Defendant's alleged misconduct occurred outside of California and in cyberspace"). As Judge Alsup recently put it in dismissing claims based on a website's use of Meta Pixel technology for lack of personal jurisdiction, "individualized targeting" of the forum is the critical component of the "express aiming" that is needed to satisfy the purposeful direction test, and allegations that the defendant operated an interactive website "offer[ing] an identical experience regardless of the forum of access" is insufficient. *Carroll*, 2023 WL 4053796, at *4 (involving claims under the Video Privacy Protection Act).

A recent First Circuit decision addressing session replay-based claims is in accord. That court affirmed the dismissal of session replay claims against Bloomingdales for lack of personal jurisdiction, noting that Bloomingdales merely used, through third party session replay providers, session replay code on its website "in a manner that would be recognized by internet browsers located anywhere in the world (including Massachusetts)." *Rosenthal v. Bloomingdales.com, LLC*, 101 F.4th 90, 97 (1st Cir. 2024). The plaintiff's allegations of this untargeted and undifferentiated use of session replay software failed to show that "Bloomingdales purposely deployed SRC [session replay code] to intentionally target users in Massachusetts." *Id.*

Next, the complaint's allegations that Ally knows it has California customers and that Californians access its website (Compl. ¶¶ 3-4) cannot establish specific jurisdiction. The Ninth Circuit made clear in *AMA* that the mere foreseeability that users of the website will be located in the forum is not a sufficient basis for personal jurisdiction after *Walden*: "[a]lthough [the defendant] may have foreseen that [its website] would attract a substantial number of viewers in the United States, this alone does not support a finding of express aiming" at the United States. 970 F.3d at 1210; *see Mikulsky*, 682 F. Supp. 3d at 867 (holding that "mere foreseeability that

someone may be harmed in the forum state does not suffice to confer specific personal jurisdiction") (quoting *Massie*, 2021 WL 2142728, at *5).

Finally, in an effort to bolster Ally's contacts with California, the complaint alleges that "Defendant offers banking services at over 43,000 Allpoint ATMs throughout the United States, including in California." Compl. ¶ 4. That allegation has nothing to do with the claims in this case, which are based on the use of Ally's website. And the allegation does not help Mahoney establish express aiming in any event. As the complaint acknowledges, the ATMs are not owned or operated by Ally or Ally Bank, but rather by Allpoint, an interbank network. *Id.* Ally Bank is an online-only bank that has no physical branches in California or any other state. Lemma Decl. ¶ 3. And as the allegation itself makes clear, Allpoint ATMs are located "throughout the United States"; there is nothing about them that is specific to California.

In short, there is no basis to conclude that Ally has "expressly aimed" the operation of its website, let alone its use of session replay and Meta Pixel technologies, at California in a manner sufficient to confer jurisdiction.

*2. Mahoney's claims do not arise out of or relate to Ally's alleged forum-related activities.*

For similar reasons, Mahoney does not, and cannot, allege any facts suggesting that his claims "arise out of or relate to" any conduct by Ally in California. *See Ford*, 592 U.S. at 362 (quotation marks omitted); *Axiom Foods*, 874 F.3d at 1068. To satisfy this requirement, "there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 1780 (2017) (quotation marks omitted). Although "but-for causation" is no longer required to satisfy this element,[7] "the phrase 'relate to'"

[7] Prior to *Ford*, the rule in the Ninth Circuit was that "[i]n determining whether [plaintiff's] claims arise out of [defendant's] forum-related conduct, 'the Ninth Circuit

continues to "incorporate[] real limits, as it must to adequately protect defendants foreign to a forum." *Ford*, 592 U.S. at 362.

Mahoney does not even attempt to plead this requirement beyond the conclusory allegation that "Plaintiff's claims arise out of Defendant's forum-related activities." Compl. ¶ 6. To the extent Mahoney is referring to Allpoint ATMs that Ally's online banking customers can access in California (*id.* ¶ 4), that allegation is completely disconnected from Mahoney's claims, which are based on the use of Ally's website. The *Massie* court and others have rejected similar attempts to base jurisdiction on unrelated in-state activities, including based on overbroad readings of *Ford* that would undermine the "real limits" that the Supreme Court emphasized. As the *Massie* court put it, "Plaintiffs here allege claims for invasion of privacy based on software used to improve user experience and functionality on a nationally accessible website that is operated from Michigan. The relevant events and alleged injury all occurred online." 2021 WL 2142728, at *6. The court therefore concluded that "[a]lthough GM seeks to serve the market for automobiles in California, the sales of those automobiles, unlike in *Ford*, are not related to this suit." *Id.*; *cf. Carroll*, 2023 WL 4053796, at *4 ("General references to defendant's online sales to California and plaintiffs' past purchases of Folgers coffee are orthogonal to whether the conduct violative of VPPA alleged here [based on viewing videos on the Folgers website] ties to California.").

The same reasoning applies here. And for the reasons explained above, Ally's operation of a broadly-accessible website does not constitute the type of minimum contacts with the forum needed for specific personal jurisdiction.

This case is therefore unlike *Ford* or cases involving claims based on the use of a website to facilitate physical sales of a product into the forum. *See, e.g.*, *Herbal Brands v. Photoplaza, Inc.*, 72 F.4th 1085, 1096 (9th Cir. 2023) (holding that the

---

follows the 'but for' test.'" *Menken v. Emm*, 503 F.3d 1050, 1058 (9th Cir. 2007) (quoting *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1075 (9th Cir. 2001)).

defendant was subject to personal jurisdiction in Arizona for Lanham Act claims based on online sales of allegedly-infringing wellness products to Arizona residents). Indeed, the Supreme Court in *Ford* expressly *distinguished* the personal injury case before it, which involved physical product sales into the forum, and resulting malfunction and injury there, from "internet transactions" and other cases "present[ing] the very different questions whether and how a defendant's virtual 'presence' and conduct translate into 'contacts' with a particular State"—questions that the Supreme Court expressly said "we do not here consider." *Ford*, 592 U.S. at 366 n.4. Thus, this suit does not arise out of or relate to Ally's California contacts.

In short, Mahoney has not established that this Court has specific jurisdiction over Ally. Because neither specific nor general jurisdiction exists, the Court should dismiss Mahoney's claims for lack of personal jurisdiction.

## II. In The Alternative, The Court Should Transfer This Action Based On The Contractual Forum-Selection Clause.

In the alternative, the Court need not decide whether personal jurisdiction over Ally would be proper because it can and should transfer the action pursuant to 28 U.S.C. § 1404(a) based on the Utah forum-selection clause in Mahoney's deposit agreement.[8] As discussed above (at 4-5), Mahoney agreed to the Ally Bank Deposit Agreement and Disclosures, including agreeing to bring "[a]ny lawsuit regarding [his] account … in a proper court in the State of Utah." Lemma Decl. Ex. 2 § I.D; *see also* Compl. ¶ 3 (alleging that Mahoney's use of the Ally website included opening an account and using online banking services).

---

[8] The Court has the option of transferring under Section 1404 without reaching the personal jurisdiction question. *See, e.g.*, *Southard v. Kipper Tool Co.*, 2023 WL 6959145, at *2 (N.D. Cal. Oct. 19, 2023) (citing *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962), and collecting cases); *Star Fabrics, Inc. v. Ross Stores, Inc.*, 2017 WL 10439691, at *3 (C.D. Cal. Nov. 20, 2017) (granting motion to transfer under Section 1404 and denying as moot defendant's motion to dismiss for lack of personal jurisdiction); *Microsoft Corp. v. Hagen*, 2010 WL 11527312, at *1-2 (E.D. Cal. Aug. 30, 2010) (same); *Biswas v. HR Value Grp., LLC*, 2002 WL 31261160, at *4 (N.D. Cal. Oct. 4, 2002) (same).

"When the parties have agreed to a valid forum-selection clause," as here, "a district court should ordinarily transfer the case to the forum specified in that clause." *Atlantic Marine*, 571 U.S. at 62; *accord Sun*, 901 F.3d at 1087. That result respects "the parties' agreement as to the most proper forum." *Atlantic Marine*, 571 U.S. at 62 (quotation marks omitted); *Sun*, 901 F.3d at 1088. For that reason, the Supreme Court has emphasized that "a proper application of § 1404(a) requires that a forum-selection clause be 'given controlling weight in all but the most exceptional cases.'" *Atlantic Marine*, 571 U.S. at 59-60 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (Kennedy, J., concurring)).

"[T]he enforceability of a forum-selection clause in a federal court is a well-established matter of federal law." *Lee*, 70 F.4th at 1143 (quotation marks omitted). Under Ninth Circuit precedent applying *Atlantic Marine*, a forum selection clause controls unless the plaintiff makes "a strong showing that: (1) the clause is invalid due to fraud or overreaching[;] (2) enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision[;] or (3) trial in the contractual forum will be so gravely difficult and inconvenient that the litigant will for all practical purposes be deprived of his day in court." *Sun*, 901 F.3d at 1088 (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15, 18 (1972)) (internal quotation marks omitted); *accord Heinz*, 2023 WL 4466904, at *2.

Mahoney cannot meet his heavy burden of making this "strong showing." For example, there is no fraud or overreaching in Ally's garden-variety forum selection clause or in customers' agreement to that clause. *See Chinitz*, *supra*, at 1 (enforcing the same clause). Nor is the forum-selection clause unenforceable because it is located in a standardized form contract. The Supreme Court has expressly rejected the "determination that a nonnegotiated forum-selection clause in a . . . contract is never enforceable simply because it is not the subject of bargaining." *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593 (1991) (enforcing forum-selection clause in

cruise ship passenger's ticket). The Ninth Circuit has echoed that holding on multiple occasions, explaining that any asserted "'differential in power or education on a non-negotiated contract will not vitiate a forum selection clause.'" *Lee*, 70 F.4th at 1142 (quoting *Murphy v. Schneider Int'l*, 362 F.3d 1133, 1141 (9th Cir. 2004)); *see also Heinz*, 2023 WL 4466904, at *2 (enforcing the forum-selection clause in Amazon's standardized non-negotiable customer terms).

Nor can Mahoney point to any strong public policy of California that would be violated by enforcement of the forum-selection clause. While Mahoney asserts claims under a California statute, to the extent that California law applies, "federal judges routinely apply the law of a State other than the State in which they sit." *Atlantic Marine*, 571 U.S. at 67. Federal courts in the District of Utah are fully capable of applying California law. *See, e.g.*, *Diamond Ranch Acad., Inc. v. Filer*, 2016 WL 633351, at *1 & n.2 (D. Utah Feb. 17, 2016); *Soundvision Techs., LLC v. Templeton Group Ltd.*, 929 F. Supp. 2d 1174, 1192-95 (D. Utah 2013); *Digecor, Inc. v. E.Digital Corp.*, 2009 WL 706888, at *8 (D. Utah Mar. 13, 2009); *RMA Ventures v. SunAmerica Life Ins.*, 2007 WL 4206952, at *3 (D. Utah Nov. 26, 2007). Moreover, the Ninth Circuit has made clear that there is a "strong federal policy in favor of enforcing forum-selection clauses," *Sun*, 901 F.3d at 1091, and that policy should be honored when enforcement would not "override" any express statutory rights or remedies, *Lee*, 70 F.4th at 1050 n.17.

Finally, and relatedly, litigating the case in the District of Utah would not "be so gravely difficult and inconvenient that [Mahoney] will for all practical purposes be deprived of his day in court." *Sun*, 901 F.3d at 1091 (quotation marks omitted). The Supreme Court's *Atlantic Marine* decision suggests this prong "is difficult to satisfy," requiring far more than a showing of inconvenience to the plaintiff or witnesses. *Id.* (citing *Atlantic Marine*, 571 U.S. at 64). As just discussed, litigating this case in the District of Utah will not affect Mahoney's ability to pursue his claims. But in all events, "under *Atlantic Marine*, courts must enforce a forum-selection clause unless

the contractually selected forum affords the plaintiffs ***no remedies whatsoever***." *Sun*, 901 F.3d at 1092 (emphasis added) (citing *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 774 (5th Cir. 2016)). Accordingly, a "clause remains enforceable even when the contractually selected forum may afford the plaintiffs less effective remedies than they could receive in the forum where they filed suit." *Id.* So long as "there exists a basically fair court system in [the chosen] forum that would allow the plaintiff to seek some relief," the plaintiff cannot satisfy this narrow exception to the enforcement of a forum-selection clause. *Id.* (quotation marks omitted). Mahoney cannot seriously contend that a Utah federal court is not a "basically fair court system" for the resolution of his claims.

In short, Mahoney cannot meet his heavy burden of showing exceptional circumstances preventing enforcement of his agreement to litigate in Utah, not California. *See also Chinitz*, *supra*, at 1 (enforcing Ally Bank's forum-selection clause, noting that "[t]he clause should be afforded controlling weight in all but the most exceptional cases, and plaintiff has not shown that this is an exceptional case or that the clause is otherwise invalid"). Under *Atlantic Marine* and Ninth Circuit precedent, the Court should transfer the case to the District of Utah if it does not dismiss the complaint for lack of personal jurisdiction over Ally.

**CONCLUSION**

Ally respectfully requests that the Court dismiss the complaint for lack of personal jurisdiction, or, in the alternative, transfer the case to the District of Utah.

Dated: September 4, 2024

MAYER BROWN LLP

By: /s/ Anthony J. Weibell
Anthony J. Weibell
Archis A. Parasharami
Sophia M. Mancall-Bitel
Daniel E. Jones

Attorneys for Defendant Ally Financial Inc.