**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Brittany S. Scott (State Bar No. 327132)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
bscott@bursor.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

MICHAEL MAHONEY, individually and on behalf of all others similarly situated,

Plaintiff,

v.

ALLY FINANCIAL INC.,

Defendant.

Case No. 4:24-cv-2392-HSG

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR TO TRANSFER**

Date: December 5, 2024
Time: 2:00 p.m.
Courtroom: 2, 4th Floor
Judge: Hon. Haywood S. Gilliam, Jr.

## TABLE OF CONTENTS

PAGE(S)

INTRODUCTION .......... 1

LEGAL STANDARDS .......... 2

I. THIS COURT HAS PERSONAL JURISDICTION OVER ALLY UNDER *PACCAR* .......... 3

II. THIS COURT HAS PERSONAL JURISDICTION OVER ALLY UNDER *CALDER* .......... 6

A. Defendant Purposefully Directed Its Activities At California .......... 6

1. Defendant Committed an Intentional Act .......... 6

2. Defendant's Conduct Was Expressly Aimed At California .......... 6

3. Defendant's Conduct Caused Harm That It Knew Would Likely Be Suffered In California .......... 13

B. Plaintiff's Claim Arises From Defendant's Forum-Related Activities .......... 14

C. It Is Reasonable To Exercise Jurisdiction Over Defendant In California .......... 16

III. THE MOTION TO TRANSFER SHOULD BE DENIED BECAUSE THE FORUM SELECTION CLAUSE IS INAPPLICABLE .......... 16

CONCLUSION .......... 19

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*A.A.P. v. Sierra Plumas Joint Unif. Sch. Dist.*,
2021 WL 847812 (E.D. Cal. Mar. 5, 2021) ........ 16

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*,
751 F.3d 796 (7th Cir. 2014) ........ 13

*Allstar Marketing Group, LLC v. Your Store Online, LLC*,
666 F. Supp. 2d 1109 (C.D. Cal. 2009) ........ 8

*Am. Auto. Ass'n, Inc. v. Darba Enterprises Inc.*,
2009 WL 1066506 (N.D. Cal. Apr. 21, 2009) ........ 7

*AMA Multimedia, LLC v. Wanat*,
970 F.3d 1201 (9th Cir. 2020) ........ 9, 12

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*,
571 U.S. 49 (2013) ........ 2

*Balanzar v. Fid. Brokerage Servs., LLC*,
654 F. Supp. 3d 1075 (S.D. Cal. 2023) ........ 18

*be2 LLC v. Ivanov*,
642 F.3d 555 (7th Cir. 2011) ........ 13

*Bergstein v. Parmar*,
2014 WL 12586073 (C.D. Cal. June 23, 2014) ........ 6, 12, 13

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) ........ 16

*Carroll v. J.M. Smucker Co.*,
2023 WL 4053796 (N.D. Cal. June 15, 2023) ........ 12

*Clark-Alonso v. Southwestern Airlines Co.*,
440 F. Supp. 3d 1089 (N.D. Cal. 2020) ........ 17, 18

*Craigslist, Inc. v. Kerbel*,
2012 WL 3166798 (N.D. Cal. Aug. 2, 2012) ........ 7

*Cybersell, Inc. v. Cybersell, Inc.*,
130 F.3d 414 (9th Cir. 1997) ........ 9

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) ........ 2

*Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*,
557 F.2d 1280 (9th Cir. 1977) ........ 3

*Doe v. Kaiser Found. Health Plan, Inc.*,
2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) ........ 5

*Doe v. Princess Cruise Lines, Ltd.*,
657 F.3d 1204 (11th Cir. 2011) ........ 18

*Dole Food Co. v. Watts*,
303 F.3d 1104 (9th Cir. 2002) ........ 6

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
592 U.S. 351 (2021) ........ 11, 14, 15

*Freestream Aircraft (Bermuda) Limited v. Aero Law Group*,
905 F.3d 597 (9th Cir. 2018) ........ 3, 4, 11

*Gadda v. State Bar of Cal.*,
511 F.3d 933 (9th Cir. 2007) ........ 16

*Gerritsen v. Warner Bros. Ent. Inc.*,
112 F. Supp. 3d 1011 (C.D. Cal. 2015) ........ 19

*Gruber v. Yelp Inc.*,
55 Cal. App. 5th 591 (2020) ........ 5

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ........ 4

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
466 U.S. 408 (1984) ........ 3

*Hendrickson v. California Newspapers, Inc.*,
48 Cal. App. 3d 59 (1975) ........ 14

*Herbal Brands, Inc. v. Photoplaza, Inc.*,
72 F.4th 1085 (9th Cir. 2023) ........ 11

*Howard v. Goldbloom*,
30 Cal.App.5th 659 (2018) ........ 18

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ........ 4

*Int'l Shoe Co. v. Washington*,
326 U.S. 310 (1945) ........ 2, 3

*j2 Cloud Servs., Inc. v. Fax87*,
2017 WL 1535083 (C.D. Cal. Apr. 27, 2017) ........ 7

*Jackson v. Amazon.com, Inc.*,
65 F.4th 1093 (9th Cir. 2023) .......... 18

*James v. Walt Disney Co.*,
701 F. Supp. 3d 942 (N.D. Cal. 2023) .......... 5

*Jeske v. Fenmore*,
2008 WL 5101808 (C.D. Cal. Dec. 1, 2008) .......... 8

*JPaulJones, L.P. v. Zurich Gen. Ins. Co. (China) Ltd.*,
533 F. Supp. 3d 999 (D. Or. 2021) .......... 17

*Kauffman v. Papa John's Int'l, Inc.*,
2024 WL 171363 (S.D. Cal. Jan. 12, 2024) .......... 13

*Kearney v. Salomon Smith Barney, Inc.*,
39 Cal. 4th 95 (2006) .......... 5, 13, 14, 15

*Keeton v. Hustler Magazine, Inc.*,
465 U.S. 770 (1984) .......... 9

*Lindora, LLC v. Isagenix Int'l, LLC*,
198 F. Supp. 3d 1127 (S.D. Cal. 2016) .......... 10

*Loomis v. Slendertone Distribution, Inc.*,
420 F. Supp. 3d 1046 (S.D. Cal. 2019) .......... 8

*Manetti-Farrow, Inc. v. Gucci Am., Inc.*,
858 F.2d 509 (9th Cir. 1988) .......... 16

*Massie v. Gen. Motors Co.*,
2021 WL 2142728 (E.D. Cal. May 26, 2021) .......... 12

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
647 F.3d 1218 (9th Cir. 2011) .......... 4, 7, 9

*McGibney v. Retzlaff*,
2015 WL 3807671 (N.D. Cal. June 18, 2015) .......... 12

*Mega Distrib. Int'l, Inc. v. Mattoon Rural King Supply, Inc.*,
2015 WL 12776592 (C.D. Cal. Dec. 1, 2015) .......... 7

*Mikulsky v. Bloomingdale's, LLC*,
713 F. Supp. 3d 833 (S.D. Cal. 2024) .......... 13

*Mikulsky v. Noom, Inc.*,
682 F. Supp. 3d 855 (S.D. Cal. 2023) .......... 12

*Millers v. Collectors Universe, Inc.*,
159 Cal. App. 4th 988 (2008) .......... 14

*Myers v. Bennett Law Offices*,
238 F.3d 1068 (9th Cir. 2001) ........ 12

*Noel v. Hall*,
568 F.3d 743 (9th Cir. 2009) ........ 4

*Paccar Intern., Inc. v. Commercial Bank of Kuwait, S.A.K.*,
757 F.2d 1058 (9th Cir. 1985) ........ 1, 3

*Popa v. Harriet Carter Gifts, Inc.*,
52 F.4th 121 (3d Cir. 2022) ........ 4

*Ranza v. Nike, Inc.*,
793 F.3d 1059 (9th Cir. 2015) ........ 2

*Reese v. BP Exploration (Alaska) Inc.,*
643 F.3d 681 (9th Cir. 2011) ........ 19

*Rio Props. v. Rio Int'l Interlink*,
284 F.3d 1007 (9th Cir. 2002) ........ 7

*Rosenthal v. Bloomingdales.com, LLC*,
101 F.4th 90 (1st Cir. 2024) ........ 13

*S.D. v. Hytto Ltd.*,
2019 WL 8333519 (N.D. Cal. May 15, 2019) ........ passim

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004) ........ 1, 2, 3, 6

*Sinatra v. Nat'l Enquirer, Inc.*,
854 F.2d 1191 (9th Cir.1988) ........ 9

*Stomp, Inc. v. NeatO, LLC*,
61 F. Supp. 2d 1074 (C.D. Cal. 1999) ........ 8

*Swarts v. Home Depot, Inc.*,
689 F. Supp. 3d 732 (N.D. Cal. 2023) ........ 11, 13, 14, 15

*Tanner v. Acushnet Co.*,
2023 WL 8152104 (C.D. Cal. Nov. 20, 2023) ........ 4

*Tire v. Mandala*,
2020 WL 6153110 (C.D. Cal. Sept. 10, 2020) ........ 7

*United States v. Luong*,
471 F.3d 1107 (9th Cir. 2006) ........ 4

*Valentine v. Nebuad, Inc.*,
2009 WL 8186130 (N.D. Cal. Oct. 6, 2009) ........ 6

*Walden v. Fiore*,
571 U.S. 277 (2014) .......... 2

*Wine Grp. LLC v. Levitation Mgmt., LLC*,
2011 WL 4738335 (E.D. Cal. Oct. 6, 2011) .......... 9

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*,
433 F.3d 1199 (9th Cir. 2006) .......... 4

*Yei A. Sun v. Advanced China Healthcare*, Inc.,
901 F.3d 1081 (9th Cir. 2018) .......... 16

*Ziegler v. Indian River County*,
64 F.3d 470 (9th Cir. 1995) .......... 16

**STATUTES**

18 U.S.C. § 2510 .......... 4

28 U.S.C. § 1404(a) .......... 1, 2, 16

Cal. Fin. Code § 4050 .......... 1

**RULES**

Fed. R. Civ. P. 9(b) .......... 6

Fed. R. Civ. P. 12(b)(2) .......... 1, 2

**REGULATIONS**

16 C.F.R. § 313.3 .......... 1

## INTRODUCTION

Plaintiff Michael Mahoney ("Plaintiff") filed this action against Defendant Ally Financial Inc. ("Defendant" or "Ally") for aiding, employing, agreeing with, or otherwise enabling several third parties[1] to eavesdrop on communications sent and received by Plaintiff and Class Members on Defendant's website, ally.com (the "Website"). These include communications that contain sensitive and confidential information – i.e., "nonpublic personal information," as defined by 16 C.F.R. § 313.3 (the "Gramm-Leach-Biley Act" or "GLBA") and Cal. Fin. Code § 4050, *et seq.* (the "California Financial Information Privacy Act" or "CalFIPA"). By failing to procure consent before enabling the Third Parties to intercept these communications, Defendant violated the California Invasion of Privacy Act ("CIPA") §§ 631-632.

Defendant moves under Federal Rule of Civil Procedure 12(b)(2) to dismiss the complaint for lack of personal jurisdiction. Defendant alternatively moves under 28 U.S.C. § 1404(a) to transfer this case to the United States District Court for the District of Utah, given the forum selection clause in Ally's Deposit Agreement. Defendant's arguments should be rejected.

***First***, the Court has personal jurisdiction under *Paccar Intern., Inc. v. Commercial Bank of Kuwait, S.A.K.*, 757 F.2d 1058 (9th Cir. 1985), as Defendant's intentional tortious conduct took place in California. Even assuming that Defendant's conduct took place outside California – which it didn't – exercising personal jurisdiction over Defendant is also proper under *Calder*. Defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 805 (9th Cir. 2004).

***Second***, transfer is improper. The Deposit Agreement's forum selection clause applies only to "lawsuit[s] regarding your account[.]" Lemma Decl. Ex. 2 § I.D. But this is not a lawsuit "regarding [Plaintiff's] account."

[1] LogRocket, Inc. ("LogRocket"), Content Square, Inc. ("Clicktale"), Datadog, Inc. ("Datadog"), Qualtrics, LLC ("Qualtrics"), and Meta Platforms, Inc. ("Facebook") (collectively, the "Third Parties").

**LEGAL STANDARDS**

**Rule 12 (b)(2)**

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014)). California's long-arm statute is coextensive with federal due process requirements. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800–01 (9th Cir. 2004). "Although a nonresident's physical presence within the territorial jurisdiction of the court is not required, the nonresident generally must have 'certain minimum contacts ... such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Walden*, 571 U.S. at 283 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

When a defendant raises a challenge to personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper. *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015). "Where, as here, the defendant's motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Id.* "[T]he plaintiff cannot simply rest on the bare allegations of its complaint," but the uncontroverted allegations in the complaint must be accepted as true. *Schwarzenegger*, 374 F.3d at 800 (quotation marks and citation omitted). Factual disputes created by conflicting affidavits must be resolved in the plaintiff's favor. *Id.*

**28 U.S.C. § 1404(a)**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). In cases not involving a forum selection clause, "a district court considering a § 1404(a) motion must evaluate both the private interests of the parties and public-interest considerations." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 51 (2013). However, when the transfer motion is premised on a forum selection clause, the plaintiff's choice of forum merits no weight and the plaintiff "bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.*

## ARGUMENT

### I. THIS COURT HAS PERSONAL JURISDICTION[2] OVER ALLY UNDER *PACCAR*

Defendant contends the Court "[l]acks [p]ersonal [j]urisdiction [o]ver Ally." MTD at 7. Not so. A forum state may exercise personal jurisdiction over a nonresident defendant if the defendant has certain "minimum contacts" with the forum "such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (cleaned up). Traditionally, courts exercise either general or specific jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). General jurisdiction exists where a defendant's activities in the state are "substantial" or "continuous and systematic," even if the cause of action is unrelated to those activities. *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280 (9th Cir. 1977). Where general jurisdiction is inappropriate, a court may still exercise specific jurisdiction if the defendant has sufficient minimum contacts with the forum state in relation to the plaintiff's cause of action. *Id.*

The Court has specific jurisdiction over Ally. For specific jurisdiction to exist, first, "[t]he non-resident defendant must purposefully direct his activities" or "purposefully avail[] himself of the privilege of conducting activities in the forum." *Schwarzenegger*, 374 F.3d at 802. Second, "the claim must be one which arises out of or relates to the defendant's forum-related activities." *Id.* Third, "the exercise of jurisdiction ... must be reasonable." *Id.*

This test is easily met here, as the Ninth Circuit has held that "[t]he commission of an intentional tort in a state is a purposeful act that will satisfy the first two requirements" of personal jurisdiction, and "[a] tortious act, standing alone, can satisfy all three requirements . . . if the act is aimed at a resident of the state or has effects in the state." *Paccar Intern., Inc. v. Commercial Bank of Kuwait, S.A.K.*, 757 F.2d 1058, 1064 (9th Cir. 1985). "[T]he history of the effects doctrine and its place in our jurisprudence makes clear that *Paccar*, not *Calder*, is the proper starting place where an intentional tort is committed within the forum state." *Freestream Aircraft (Bermuda) Limited v. Aero Law Group*, 905 F.3d 597, 606 (9th Cir. 2018) (clarifying the ambiguous decisions

[2] Plaintiff does not contend the Court has general jurisdiction over Ally.

in *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199 (9th Cir. 2006) and *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218 (9th Cir. 2011)). "*Paccar* was rooted in the well-settled understanding that the commission of a tort within the forum state usually supports the exercise of personal jurisdiction." *Freestream Aircraft*, 905 F.3d at 603.

Nonetheless, Defendant argues that this Court does not have specific jurisdiction because Plaintiff "does not allege that any of Ally's actions or conduct concerning the … third-party session replay and Meta Pixel technologies occurred in … California." MTD at 4. This is false. When Defendant aided, employed, agreed with, or otherwise enabled the Third Parties to intercept ally.com communications from California residents (including Plaintiff), this conduct took place in California.

"The Ninth Circuit has construed the term intercept according to its ordinary meaning as the act of acquiring, or coming into possession of. … Such acquisition occurs when the contents of a [] communication are captured or redirected in any way." *Tanner v. Acushnet Co.*, 2023 WL 8152104, at *5–6 (C.D. Cal. Nov. 20, 2023) (internal quotation marks omitted) (citing *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 795 (N.D. Cal. 2022); *Noel v. Hall*, 568 F.3d 743, 749 (9th Cir. 2009)).

The capture and/or redirection of communications occurs geographically at the situs of the wiretapped party, herself. *See, e.g.*, *United States v. Luong*, 471 F.3d 1107, 1109 (9th Cir. 2006) (interpreting the federal Wiretap Act, 18 U.S.C. § 2510 *et seq.*[3] accordingly and finding, *inter alia*, "interception occurs where the tapped phone is located"); *Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 130-31 (3d Cir. 2022) (interpreting Pennsylvania's wiretapping statute and finding that "[e]lectronic communications are ... 'intercepted' when software reroutes communications to an interceptor"; thus, "[the interceptor] intercepted [plaintiff's] communications at the point where it routed those communications to its own servers. And that was at [plaintiff's] browser, not where

[3] Note, "[t]he analysis for a violation of CIPA is the same as that under the federal Wiretap Act." *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1092 (N.D. Cal. 2022) (citation omitted).

the signals were received at [the interceptor's] servers.");[4] *Gruber v. Yelp Inc.*, 55 Cal. App. 5th 591, 610–11 (2020), as modified on denial of reh'g (Oct. 23, 2020) ("Pen. Code, § 632 applies to conversations between a California resident and a nonresident corporation located outside California[.]") (cleaned up); *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 119-20 (2006) (examining "the issue [of] whether the [CIPA] was intended to apply when one party to a telephone call is in California and another party is outside California" and finding appropriate "application of the statute in a setting in which a person outside California records, without the Californian's knowledge or consent, a telephone conversation of a California resident who is within California.").

Here, the contents of the communications at issue were captured and/or redirected in California, and thus they were intercepted in California. Plaintiff (a California resident) alleges that his communications on ally.com were intercepted by Third Parties, including Facebook (a California Corporation), when he accessed ally.com **from California**. *See* Compl. ¶ 3 ("Plaintiff [] **was in California** when he visited the Website[] … [and e]ach of [his] communications was intercepted in transit by the Third Parties—as enabled by Defendant.") (emphasis added), *id.* ¶¶ 6, 100; *see also* Declaration of Brittany S. Scott ("Scott Decl."), Ex. A (Statement of Information from the California Secretary of State website pertaining to Meta Platforms, Inc.).

Because Defendant's tortious conduct took place in California, the *Calder* effects test is inappropriate, and *Paccar* applies. Consequently, the first two prongs (i.e., purposeful direction, arising out of or relating to forum-related activity) are met.

---

[4] Courts conducting choice-of-law analyses as to the CIPA have frequently discussed *Popa*. *See, e.g.*, *James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 963–64 (N.D. Cal. 2023), *motion to certify appeal denied,* No. 2024 WL 664811 (N.D. Cal. Feb. 16, 2024) (discussing *Popa* along with the proposition that "California considers the place of the wrong to be the state where the last event necessary to make the actor liable occurred.") (cleaned up); *Doe v. Kaiser Found. Health Plan, Inc.*, 2024 WL 1589982, at *13, 13 n.5 (N.D. Cal. Apr. 11, 2024) (discussing *Popa* along with the proposition that "[b]ecause wiretapping statutes are designed to protect the privacy interests of individual members, the residences of the individuals are more important to the respective sovereign than the residence of the alleged wrongdoer.").

## II. THIS COURT HAS PERSONAL JURISDICTION OVER ALLY UNDER *CALDER*

### A. Defendant Purposefully Directed Its Activities At California

Even assuming that Defendant's conduct took place outside California – which it didn't – exercising personal jurisdiction over Defendant is also proper under *Calder*. As Defendant notes, the *Calder* effects test "requires that the defendant have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Schwarzenegger*, 374 F.3d at 805, quoting *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002).

#### 1. <u>Defendant Committed an Intentional Act</u>

Defendant glosses over the first requirement, primarily focusing instead on whether "Ally's alleged intentional acts[] … were expressly aimed at California." MTD at 10. In any event, numerous courts have held that "the 'intentional act' standard is easily satisfied" where the plaintiff alleges that the "[defendant] purposefully intercepted electronic transmissions from and/or to users in [California]." *S.D. v. Hytto Ltd.*, 2019 WL 8333519, at *4 (N.D. Cal. May 15, 2019). *See also Bergstein v. Parmar*, 2014 WL 12586073, at *3 (C.D. Cal. June 23, 2014) ("The 'intentional act' prong is easily satisfied in this case. Parmar committed an intentional act when he allegedly recorded the parties' telephone conversations …."); *Valentine v. Nebuad, Inc.*, 2009 WL 8186130, at *6 (N.D. Cal. Oct. 6, 2009) (holding "the first prong is easily satisfied" in a wiretapping case).

Here, Plaintiff alleges Defendant intentionally aided, employed, agreed with, or otherwise enabled the Third Parties to eavesdrop on communications sent and received on Defendant's Website in violation of the California Invasion of Privacy Act ("CIPA") §§ 631-632. *See* Compl. ¶¶ 25, 46, 63, 73-78, 86-89, 116; *see also* Fed. R. Civ. P. 9(b) (intent may be alleged "generally"). Thus, Defendant committed an intentional act.

#### 2. <u>Defendant's Conduct Was Expressly Aimed At California</u>

Defendant contends that it did not expressly aim its conduct at California. MTD at 10-13. In support, Defendant argues that "Ally's website is accessible throughout the United States, not just California" and "geographic criteria [do not] affect the operation of session replay or Meta

Pixel technologies on Ally's website[.]" MTD at 10 (citations omitted). However, the Ninth Circuit has held that "operating even a passive website in conjunction with 'something more'—conduct directly targeting the forum—is sufficient." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1229 (9th Cir. 2011) (citing *Rio Props. v. Rio Int'l Interlink*, 284 F.3d 1007, 1020 (9th Cir. 2002)). "In determining whether a nonresident defendant has done 'something more,' [the Ninth Circuit] consider[s] several factors, including the interactivity of the defendant's website, … the geographic scope of the defendant's commercial ambitions, … and whether the defendant 'individually targeted' a plaintiff known to be a forum resident[.]" *Id.* (cleaned up). Defendant obfuscates each of these points and ultimately comes up short on each one.

***First***, Defendant argues that "the mere interactivity of Ally's website is not enough[]" and "individualized targeting of the forum is the critical component of [] express aiming[.]" MTD at 11-12 (cleaned up). But "[w]hether a website's interactivity is enough to confer specific jurisdiction is based on a sliding scale." *Mega Distrib. Int'l, Inc. v. Mattoon Rural King Supply, Inc.*, 2015 WL 12776592, at *4 (C.D. Cal. Dec. 1, 2015) (cleaned up). "At one end of the scale are 'passive' websites which merely display information, such as an advertisement." *Am. Auto. Ass'n, Inc. v. Darba Enterprises Inc.*, 2009 WL 1066506, at *4 (N.D. Cal. Apr. 21, 2009) (cleaned up). "At the other end of the scale are 'interactive' websites which function for commercial purposes and where users exchange information." *Id.* (cleaned up).

In short, "[p]ersonal jurisdiction is appropriate when an entity is conducting business over the internet." *Id.* (cleaned up). *See also id.* (personal jurisdiction based on website with "web-page where [users] were instructed to enter their names and contact information to get a 'free rate quote.'"); *Craigslist, Inc. v. Kerbel*, 2012 WL 3166798, at *5 (N.D. Cal. Aug. 2, 2012) (personal jurisdiction based on "interactive commercial website" that "invites users, including California residents, to [make] purchase[s,] … [and] offers technical support and customer service"); *Tire v. Mandala*, 2020 WL 6153110, at *5 (C.D. Cal. Sept. 10, 2020) (personal jurisdiction where "through his website, [defendant] sold and delivered product to customers in California."); *j2 Cloud Servs., Inc. v. Fax87*, 2017 WL 1535083, at *6 (C.D. Cal. Apr. 27, 2017) (personal jurisdiction based on website "designed to enable users in California to exchange information and

[make] purchase[s]"); *Allstar Marketing Group, LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1122 (C.D. Cal. 2009); *Jeske v. Fenmore*, 2008 WL 5101808, at *4–5 (C.D. Cal. Dec. 1, 2008); *Loomis v. Slendertone Distribution, Inc.*, 420 F. Supp. 3d 1046, 1070 (S.D. Cal. 2019); *Stomp, Inc. v. NeatO, LLC*, 61 F. Supp. 2d 1074, 1078 (C.D. Cal. 1999).

Here, Defendant's Website is highly interactive and commercial in nature. "On the Website, Website users can, *inter alia*, search for and browse financial information; open an Ally account; and use Ally's online financial services (i.e., online banking, credit card, investment, mortgage, auto financing, and personal loan services)." Compl. ¶ 26. "When doing so, Website users provide Defendant with confidential information, including 'nonpublic personal information' under the GLBA and CalFIPA." *Id.* Specifically, Website users:

- "utilize the Website's search bar, browse the Website's menu of topics and pages, and navigate said pages" (*id.* ¶ 29);
- "browse for and select the type of account (i.e., checking, savings, money market, IRA, CD, credit card, mortgage, auto loan, etc.) that they would like to open" (*id.* ¶ 30);
- "notif[y] Ally of the amount that they intend to deposit and/or borrow" (*id.*);
- "check out by entering information about themsel[ves], including first name, middle name, last name, date of birth, citizenship, occupation, email address, phone number, home address (with city, state, and ZIP code), and/or social security number" (*id.*);
- "deposit and/or access money in [Ally] account[s]" (*id.*);
- "enroll in … online financial services" (*id.*); and
- "log into and use Ally's online financial services (i.e., online banking, credit card, investment, mortgage, auto financing, and personal loan services)" (*id.* ¶ 31).

As in the cases discussed above, *supra*, this is a strong basis for the exercise of personal jurisdiction.

***Second***, Defendant makes several arguments concerning the scope of its commercial ambitions:

(a) "Ally does not run advertising or marketing campaigns limited to California … [and] rather [] market[s] to customers or potential customers nationwide" (MTD at 10) (citations omitted);

(b) the subject matter of Ally's website lacks a forum-specific focus (*id.* at 11); and

(c) although "Defendant offers banking services at over 43,000 Allpoint ATMs[,] … including in California[]'" (Compl. ¶ 4) this has "nothing to do with the claims in this case … [and] does not help Mahoney establish express aiming[.]" MTD at 13.

Concerning point (a), operators of a website "can be said to have 'expressly aimed' at a forum where a website 'with national viewership and scope appeals to, and profits from, an audience in a particular state.'" *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1210 (9th Cir. 2020) (quoting *Mavrix*, 647 F.3d at 1231). "It is the aggregate effect of a defendant's contacts with the forum that courts consider, not individual acts taken in isolation, to determine if jurisdiction exists." *Wine Grp. LLC v. Levitation Mgmt., LLC*, 2011 WL 4738335, at *6 (E.D. Cal. Oct. 6, 2011) (citations omitted); *see also Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1193 (9th Cir.1988) (jurisdiction may be appropriate where there is "a series of ongoing efforts by the defendant to avail itself of the benefits of the [forum] market."). Among other things, courts consider the traffic and revenue a website receives from a certain forum when assessing a defendant's contacts. *See, e.g.*, *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 419 (9th Cir. 1997); *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 771-72, 775 (1984).

Here, Defendant's contacts with California are extensive. Defendant is registered to do business in California and maintains a registered agent for service of process in California. Scott Decl., Ex. B (screenshot of information from the California Secretary of State website pertaining to Defendant) and Ex. C (Statement of Information from the California Secretary of State website pertaining to Defendant).

Defendant derives outsized commercial benefit from doing business in California. In its 2023 Form 10-K Annual Report, required by the United States Securities and Exchange Commission, Ally states: "We are exposed to portfolio concentrations in some states, including California[.]" Scott Decl., Ex. D at 34 (Defendant Ally Financial Inc.'s Form 10-K Annual Report for the 2023 Fiscal Year). The same report states that a whopping 39.2% of Ally's consumer mortgages are concentrated in California, while the next closest states are Texas (7.3%), Florida (6.5%), and Georgia (2.9%), and **forty other states combined** total just 32.6% of Ally's consumer

mortgages. *Id.* at 81. Indeed, per the report, California is also Ally's top state for "[c]onsumer other" finance receivables and loans, with a 9.4% share. *Id.* In summary, Ally's 2023 Form 10-K states that its "highest concentrations of consumer loans are in California and Texas, which represented an aggregate of 26.4% and 26.5% of our total outstanding consumer finance receivables and loans at December 31, 2023, and December 31, 2022, respectively." *Id.*

Defendant's interactive Website, ally.com, promotes its business in California. The Website is accessible in California and allows California consumers, like Plaintiff, to "search for and browse financial information; open an Ally account; and use Ally's online financial services (i.e., online banking, credit card, investment, mortgage, auto financing, and personal loan services)." Compl. ¶ 26. Further, Defendant's Website "contains a page directed specifically to California consumers regarding [Defendant's] compliance with a California consumer protection statute[,]" which "[t]aken together[ with the above,] is strong evidence of [Defendant's] efforts to target the California market." *Lindora, LLC v. Isagenix Int'l, LLC*, 198 F. Supp. 3d 1127, 1139 (S.D. Cal. 2016). Namely, Defendant promulgates a "CCPA Disclosure for California Residents" (at ally.com/content/dam/pdf/corporate/CCPADisclosureforCAResidents_Final.pdf) and an "Insurance Information and Privacy Protection … disclosure [] for California residents" (at ally.com/content/dam/pdf/corporate/california-insurance-information-and-privacy-act-full-notice-2024.pdf.coredownload.inline.pdf). Scott Decl., Ex. E, F (copies of the foregoing policies).

Defendant has specifically sought to reach markets located in California. Ally partners with home search and valuation tool ComeHome (at ally.com/comehome) and mortgage platform Better Mortgage Corporation (at ally.com/home-loans/mortgage) to offer homeownership tools to Californians. Scott Decl., Ex. G, H (screenshots of the foregoing webpages). According to the Ally Website (at https://media.ally.com/nada?item=30149), "Ally's award-winning Wallet Wise program provide[d] free, financial literacy education through in-person and online course content. Wallet Wise reached more than 18,000 consumers[.]" Scott Decl., Ex. I (screenshot of the foregoing webpage). Per the website of the League of United Latin American Citizens (at https://lulac.org/programs/economic/WalletWiseTarget_Markets_2016.pdf), "for affiliates to receive charitable contributions from Ally for Wallet Wise sessions conducted, the nonprofit

organization affiliate [were to] teach the Wallet Wise program to low-and moderate-income people in … [certain target] markets[.]" Scott Decl., Ex. J (PDF downloaded from the League of United Latin American Citizens, or "LULAC," website). The document from LULAC shows there were 70 total target markets, with 19 in California (by far the most of any state). *Id.* The distant second-most-targeted states were Alabama and Georgia (each with 7 target markets). *Id.*

Concerning point (b), "[w]hen the website itself is the <u>only</u> jurisdictional contact, [the Ninth Circuit's] analysis turns on whether the site had a forum-specific focus or the defendant exhibited an intent to cultivate an audience in the forum." *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1092 (9th Cir. 2023), *cert. denied,* 144 S. Ct. 693, 217 L. Ed. 2d 389 (2024) (emphasis in original). But here, as discussed with respect to point (a), the Website is not Ally's **only** jurisdictional contact. And given the volume of Ally's business transacted in California, Defendant certainly exhibited an intent to (and in fact did) cultivate an audience in California.

Concerning point (c), that the Website indicates "Defendant offers banking services at over 43,000 Allpoint ATMs[,] … including in California[]'" (Compl. ¶ 4) is but another indication of the same intent. As discussed *infra* in § II.B (titled "Plaintiffs Claim Arises From Defendant's Forum-Related Activities"), these "business contacts in California" are a "connection with the forum" to which the wiretapped online communications "relate" (i.e., given Compl. ¶ 26's allegation that Website users "search for and browse financial information"), and "that is sufficient[.]" *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732 (N.D. Cal. 2023).

***Third***, Defendant raises a red herring: that "the Ally team responsible for operating Ally's website[] … is located primarily in North Carolina and Michigan[,]" as opposed to California. MTD at 10-11 (citation omitted). This ignores the Supreme Court's straightforward explanation that "[w]e have never framed the specific jurisdiction inquiry as always requiring proof of causation—*i.e.*, proof that the plaintiff's claim came about because of the defendant's in-state conduct." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 362 (2021). Instead, if the defendant's conduct "takes place outside the forum," there may still be purposeful direction if that conduct has "effects inside the forum state." *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 604 (9th Cir. 2018).

Here, the effects of the wiretapping were "felt" where Plaintiff was located—California. *See, e.g.*, *Hytto*, 2019 WL 8333519, at *2 (wiretapping caused "harm" in the location where plaintiff was located); *Bergstein*, 2014 WL 12586073, at *3, 7 (same); *cf. Myers v. Bennett Law Offices*, 238 F.3d 1068, 1075 (9th Cir. 2001) ("at least one of the 'harms' suffered by [Nevada] Plaintiffs is akin to the tort of invasion of privacy and was felt in Nevada."). Ally does not and cannot deny this.

***Fourth***, Defendant's cases miss the mark. MTD at 10-13.

In *Massie v. Gen. Motors Co.*, 2021 WL 2142728, at *4 (E.D. Cal. May 26, 2021), unlike here, "evidence provided about GM's website put[] it solidly on the passive end of the website spectrum and d[id] not support jurisdiction." Likewise, in *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 868 (S.D. Cal. 2023), unlike here, there were "no allegations detailing the level of interactivity of Defendant's website[,] … [and] no allegations regarding … specifically target[ing] Californians." *Carroll v. J.M. Smucker Co.*, 2023 WL 4053796 (N.D. Cal. June 15, 2023) concerned "the website www.folgerscoffee.com for [the] Folgers coffee brand" (at *1), which had "a few features … [plaintiffs pointed to] as interactive[.]" *Id.* *3. But in fact, and unlike here, the website "more closely track[ed] a website which d[id] not provide any direct means for purchasing [] or requesting services[, and which] simply provide[d] information"—a "passive website [] not purposefully directed to the forum state." *Id.* *4 (cleaned up). As stated *supra* at the start of § II.2, Defendant's Website is highly interactive and commercial in nature.

In *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201 (9th Cir. 2020), the plaintiff asserted "federal claims for copyright infringement, trademark infringement, and unfair competition[]" (at *1205) although the wrongful conduct itself occurred outside of the United States, as the "content available … was stored on a server in the Netherlands." *Id.* Further, in *AMA*, unlike here, merely "20% of [the website at issue's] traffic [was] from U.S. users[,]" to say nothing of Arizona users, in particular. *Id.* at 1211. In *McGibney v. Retzlaff*, 2015 WL 3807671 (N.D. Cal. June 18, 2015), the plaintiffs brought suit for (at *1) "tortious interference with contractual relations … and tortious inference with prospective economic advantage" stemming from "vitriolic postings on popular Internet forums[.]" But the "alleged misconduct occurred outside of California" and there were

"no facts or evidence to indicate that these comments were directed toward a California audience[.]" As stated in *Section I*, the wiretapping here at issue occurred in California. *Supra* § I.

In *Rosenthal*, the First Circuit applied a "purposeful availment requirement[] … focus[ed] on the defendant's intentionality and rest[ing] on two cornerstones: voluntariness and foreseeability." *Rosenthal v. Bloomingdales.com, LLC*, 101 F.4th 90, 96 (1st Cir. 2024) (cleaned up). The First Circuit ultimately held that the allegations "d[id] not establish that the totality of Bloomingdales' voluntary activities connecting it to Massachusetts rose to a [sufficient] level … [and] fail[ed] to demonstrate that Bloomingdales maintained sufficient linkages with Massachusetts to support a claim of specific jurisdiction." *Id.* at 97. This is a completely different analysis from "the purposeful direction test [that] applies here[.]" MTD at 9. Cases within the Ninth Circuit, concerning wiretapping, and exercising personal jurisdiction are far more persuasive. *See, e.g.*, *Hytto*, 2019 WL 8333519; *Bergstein*, 2014 WL 12586073; *Kauffman v. Papa John's Int'l, Inc.*, 2024 WL 171363 (S.D. Cal. Jan. 12, 2024); *Swarts*, 689 F. Supp. 3d 732; *Mikulsky v. Bloomingdale's, LLC*, 713 F. Supp. 3d 833 (S.D. Cal. 2024); *Kearney*, 39 Cal. 4th 95 (2006).

Finally, *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 803 (7th Cir. 2014) and *be2 LLC v. Ivanov*, 642 F.3d 555, 559 (7th Cir. 2011) are cited by the MTD at 11 (cleaned up) for the inapposite proposition that a website should not "open a defendant up to personal jurisdiction in every spot on the planet"—a position that Plaintiff does not take. *Advanced Tactical* and *be2* are also out-of-circuit cases that do not concern wiretapping.

In sum, none of these cases involve entities like Defendant—which achieves significant commercial benefit from doing business in California, operates a highly interactive and commercial Website promoting its business in California, and exhibits an intent (effectuated, to wit) to cultivate a substantial audience in California.

### 3. <u>**Defendant's Conduct Caused Harm That It Knew Would Likely Be Suffered In California**</u>

As set forth above, the injury here occurred where the victim was located when he accessed the Website—California. *See supra* § I. California law recognizes as such:

> The privacy interest protected by the statute is no less directly and immediately invaded when a communication *within California* is secretly and contemporaneously recorded from outside the state than when this action occurs within the state. A person who secretly and intentionally records such a conversation from outside the state effectively acts within California in the same way a person effectively acts within the state by, for example, intentionally shooting a person in California from across the California–Nevada border.

*Kearney*, 39 Cal. 4th at 119. Indeed, the right of privacy is a purely personal one. *See, e.g.*, *Hendrickson v. California Newspapers, Inc*., 48 Cal. App. 3d 59, 62 (1975); *Millers v. Collectors Universe, Inc*., 159 Cal. App. 4th 988, 1002 (2008).

And as discussed above, Defendant knew the harm would likely be suffered in California because it "provides a variety of financial services to Californians[ ] it knows to reside in the State based on address information that they must provide during Ally's account opening processes." Compl. ¶ 4; *see also id.* ¶ 30 ("the user … proceeds to check out by entering information about themselves, including first name, middle name, last name, … home address (with city, state, and ZIP code)").[5] Plaintiff alleges that Defendant intentionally used software that Defendant knew would eavesdrop on Californians' Website communications surreptitiously and without consent. *Id.* ¶¶ 25, 46, 63, 73-78, 86-89, 116. That is sufficient. *See, e.g.*, *Swarts*, 689 F. Supp. 3d 732 (The defendant "was aware that it was recording its online chat conversations with customers, which could foreseeably cause harm in California. ... The third element is therefore satisfied.").

**B. Plaintiff's Claim Arises From Defendant's Forum-Related Activities**

Defendant asserts that Plaintiff "does not, and cannot, allege any facts suggesting that his claims arise out of or relate to any conduct by Ally in California." MTD at 13 (cleaned up). Not so.

As *Ford Motor Co. v. Montana Eighth Judicial District Court*, 592 U.S. 351, 361 (2021) makes clear, the plaintiff need not establish "a strict causal relationship between the defendant's in-

[5] Plus, Defendant solicited and achieved a large California customer base (as shown by Scott Decl., Ex. B, Ally recognizes: "We are exposed to portfolio concentrations in some states, including California"; 39.2% of Ally's consumer mortgages are concentrated in California; California is Ally's top state for "[c]onsumer other" finance receivables and loans, with a 9.4% share; etc.). Defendant knew that these Californians would use the Website of its "online-only bank that has no physical branches[.]" MTD at 13.

state activity and the litigation" to satisfy this element. Rather, the suit must only "arise out of ***or relate to*** the defendant's contacts with the forum." *Id.* (emphasis added). Courts in this District have found that wiretapping is forum-related conduct. *See, e.g.*, *Swarts*, 689 F. Supp. 3d 732 ("Swarts's claim that Home Depot recorded online chat conversations concerning products he had purchased without his consent relates to Home Depot's connection with the forum, and that is sufficient for this element to be satisfied."); *Hytto*, 2019 WL 8333519, at *5 (Defendant's "alleged interception of transmissions to and/or from U.S.-based users – its forum-related conduct – forms the basis of the claims. ... Accordingly, S.D. has met her burden with respect to the second prong of the Ninth Circuit's specific personal jurisdiction test.").

Plaintiff's CIPA claims are related to and arise from Defendant's activities in California. Defendant (an entity registered to do business in California, per Scott Decl, Ex. B) aided, employed, agreed with, or otherwise enabled, *inter alia*, Facebook (a California Corporation, per Scott Decl., Ex. A) to intercept Plaintiff's ally.com communications. Defendant offers the Website so users can "search for and browse financial information; open an Ally account; and use Ally's online financial services (i.e., online banking, credit card, investment, mortgage, auto financing, and personal loan services)." Compl. ¶ 26. The Website therefore directly relates to and supports Defendant's activities in California (i.e., offering financial products and services to Californians). Plaintiff, a California resident, accessed Defendant's Website from California. *Id.* ¶ 3. Plaintiff alleges that, when he accessed the Website, he was eavesdropped upon without his knowledge or consent, and Plaintiff therefore suffered harm in California. *Id*. If Defendant had not made its Website available to California residents, Plaintiff's CIPA claim would not have arisen.

This is not a novel application of the law. As stated, the California Supreme Court held in *Kearney* that an out-of-state company which recorded telephone conversations with California residents without obtaining their consent was "clearly subject to" personal jurisdiction in California courts given that the call-recording claim "plainly arises directly out of [the company's] business activity in this state." *Kearney*, 39 Cal. 4th at 103–04. The same is true here.

### C. It Is Reasonable To Exercise Jurisdiction Over Defendant In California

Once purposeful direction is established, the forum's exercise of jurisdiction is presumptively reasonable unless the defendant presents "a compelling case" that exercising jurisdiction would be unreasonable. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985). But Defendant has chosen not to address the Ninth Circuit's seven-part test for reasonableness at all. *See Ziegler v. Indian River County*, 64 F.3d 470, 475 (9th Cir. 1995). "No factor is dispositive, but the moving party must address each." *Hytto*, 2019 WL 8333519, at *5; *see also Ziegler*, 64 F.3d at 475 ("All seven factors must be weighed").

Defendant cannot raise new arguments on reply, and Defendant has thus waived any argument that the exercise of jurisdiction is unreasonable. *See, e.g.*, *Gadda v. State Bar of Cal.*, 511 F.3d 933, 937 n.2 (9th Cir. 2007) ("It is well established that issues cannot be raised for the first time in a reply brief"); *A.A.P. v. Sierra Plumas Joint Unif. Sch. Dist.*, 2021 WL 847812, at *2, n.1 (E.D. Cal. Mar. 5, 2021) (rejecting arguments made for the first time on reply). If Defendant raises new arguments in support of the *Ziegler* factors on reply, Plaintiff respectfully asks the Court to strike or disregard any such arguments, or to permit Plaintiff to file a sur-reply to address any such arguments.

## III. THE MOTION TO TRANSFER SHOULD BE DENIED BECAUSE THE FORUM SELECTION CLAUSE IS INAPPLICABLE

Ally's Deposit Agreement contains a provision stating: "Any lawsuit regarding your account must be brought in a proper court in the State of Utah." Lemma Decl. Ex. 2 § I.D. Based on this clause, Defendant argues that the Court should transfer this action to the District of Utah pursuant to 28 U.S.C. § 1404(a). MTD at 15-18. Defendant is incorrect, as the clause does not apply to the present dispute.

Indeed, the Court must interpret the clause and determine its scope. *See Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 513 (9th Cir. 1988). The rule in the Ninth Circuit is that federal law applies to the interpretation of a forum selection clause. *Id.* In applying federal law, courts are guided by "general principles for interpreting contracts." *Yei A. Sun v. Advanced China*

*Healthcare*, Inc., 901 F.3d 1081, 1086 (9th Cir. 2018). Thus, to the extent there is any ambiguity as to whether the forum selection clause covers this dispute, "courts construe [such ambiguity] against the drafter," Defendant. *JPaulJones, L.P. v. Zurich Gen. Ins. Co. (China) Ltd.*, 533 F. Supp. 3d 999, 1009 (D. Or. 2021), *aff'd sub nom. JPaulJones, L.P. v. Zurich Ins. Co., (China) Ltd.*, 2022 WL 1135424 (9th Cir. Apr. 18, 2022).

Here, Defendant admits that its forum selection clause is only applicable to a "lawsuit **regarding your account**" at Ally. MTD at 2-3, 5 (emphasis added). The instant dispute simply does not fall under that definition. Plaintiff's claims are untethered to his Ally account.

*Clark-Alonso v. Southwestern Airlines Co*., 440 F. Supp. 3d 1089 (N.D. Cal. 2020), a case involving a CIPA claim and motion to transfer venue based on a forum-selection clause, is instructive. There, the plaintiff alleged that "[the] defendant recorded plaintiff's telephone call without his consent in violation of the CIPA." *Id.* at 1094. The unlawful recording, according to the plaintiff, occurred when he "used his cordless phone to call defendant's Rapids Rewards number, which connects to defendant's customer service representatives." *Id*. at 1092. The defendant sought to transfer venue, as the "Rapids Rewards Rules and Regulations" contained a forum-selection clause providing that:

> Any and all matters arising out of or relating to the program rules and/or the subject matter hereof shall be governed by, construed, and enforced in accordance with the laws of the United States of America, and to the extent not preempted by Federal law, the laws of the State of Texas without regard to conflict of law principles, regardless of the legal theory upon which such matter is asserted. … You and we also agree to litigate any disputes between or involving you and us exclusively in the state and federal courts within Dallas County, Texas.

*Id*. at 1092.

The court rejected the defendant's motion to transfer, holding that the forum-selection clause did not apply to the plaintiff's claim. *Id.* at 1094. "Defendant [wa]s essentially arguing that but for plaintiff's membership in the Rapid Rewards program, he would not have called the Rapid Rewards phone number. The Court f[ound] that this connection is too attenuated to support a conclusion that plaintiff's CIPA claim 'relates to' the Rapid Rewards Rules and Regulations." *Id.* at 1095.

Other courts have similarly limited language like that in Defendant's forum selection clause.

*See, e.g.*, *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1218 (11th Cir. 2011) ("[T]he terms used in the limiting language are not unlimited in scope. The term 'arising out of' is broad, but it is not all encompassing. … Similarly, 'related to' marks a boundary by indicating some direct relationship; otherwise, the term would stretch to the horizon and beyond.")[6]; *Balanzar v. Fid. Brokerage Servs., LLC*, 654 F. Supp. 3d 1075, 1080-81 (S.D. Cal. 2023) ("The fact that the CIPA cause of action loosely relates to the customer account agreement because the MyVoice technology is simply mentioned in the agreement is not enough. Plaintiff's CIPA claim is not … sufficiently related to the customer account agreement. Thus, the Court finds the Massachusetts law does not apply."); *Howard v. Goldbloom*, 30 Cal.App.5th 659 (2018) (interpreting a broad arbitration provision in an employment contract, determining that the plaintiff's claims were not rooted in his employment relationship, reasoning that the harm suffered as to his stock value was "not measured by or dependent on the terms of his employment"; rather, it involved the defendants' fiduciary duties to minority shareholders, which existed independently of any employment relationship.); *Jackson v. Amazon.com, Inc.*, 65 F.4th 1093, 1102 (9th Cir. 2023) (referring to *Howard* and finding "the harm Jackson alleges is not measured by or dependent on the terms of his work for Flex; rather, it involves Amazon's alleged breach of wiretapping statutes and invasion of privacy.") (cleaned up).

Defendant's argument fails for the same reasons. This is not a "lawsuit regarding [Plaintiff's] account" with Ally. Lemma Decl. Ex. 2 § I.D. This is a lawsuit regarding how, in violation of the CIPA, "Defendant aids, agrees with, employs, or otherwise enables [] Third Parties[7] to eavesdrop on [] confidential communications" on the Website. Compl. ¶ 27; *see also* ¶¶ 12, 23-25, 46, 63, 112-118, 123-132. As in *Southwestern Airlines*, 440 F. Supp. 3d at 1095, any "connection [between Ally accounts and this lawsuit] is too attenuated" to warrant the application of the Deposit Agreement's

---

[6] Likewise, "regarding" should be interpreted to mean "about." *Regarding*, Cambridge English Dictionary, https://dictionary.cambridge.org/us/dictionary/english/regarding; *see also Regarding*, Collins English Dictionary, https://www.collinsdictionary.com/dictionary/english/regarding ("about, as to, on the subject of"). This lawsuit is obviously not about Plaintiff's Ally account.

[7] Per Compl. ¶ 2, LogRocket, Inc. ("LogRocket"), Content Square, Inc. ("Clicktale"), Datadog, Inc. ("Datadog"), Qualtrics, LLC ("Qualtrics"), and Meta Platforms, Inc. ("Facebook").

forum selection clause, which only a portion of the putative class[8] will have assented to.

As to Plaintiff (and the putative class members who do have an Ally account), the CIPA claims at issue are independent of, and do not hinge on, having an Ally account. That is, even if Plaintiff's Ally account(s) did not exist, his wiretapping claims still would; he accessed and navigated the Website, regardless. Indeed, the Complaint describes how Plaintiff "searched for and browsed financial information" on the Website and "[e]ach of these communications was intercepted in transit by the Third Parties—as enabled by Defendant[.]" Compl. ¶ 3. Those communications by Plaintiff – which included his "typing into data fields, conveying responses to questions and prompts, and actively making other selections" (Compl. ¶ 28) – did not require or even relate to Plaintiff's Ally account(s).[9]

Accordingly, based on the foregoing, the forum selection clause does not cover this lawsuit.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that this Court deny Defendant's motion to dismiss the Complaint. Should the Court grant any part of Defendant's motion to dismiss, Plaintiff respectfully request that he be granted leave to file an amended complaint.

---

[8] Per Compl. ¶ 100, "all California residents who have accessed and navigated the Website while in California[.]" Surely, at least some of the putative class members will not have an Ally account whatsoever; they merely searched and/or browsed the Website.

[9] To the extent that the Complaint is silent as to this, when determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Exploration (Alaska) Inc.,* 643 F.3d 681, 690 (9th Cir. 2011). The Court also does not look beyond "the face of the complaint of the complaint and documents attached thereto." *Gerritsen v. Warner Bros. Ent. Inc.*, 112 F. Supp. 3d 1011, 1020 (C.D. Cal. 2015).

Dated: October 16, 2024

**BURSOR & FISHER, P.A.**

By: *__/s/ Brittany S. Scott__*
Brittany S. Scott

L. Timothy Fisher (State Bar No. 191626)
Brittany S. Scott (State Bar No. 327132)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
bscott@bursor.com

*Attorneys for Plaintiff*