MAYER BROWN LLP
Anthony J Weibell (SBN 238850)
aweibell@mayerbrown.com
Two Palo Alto Square, Suite 300
Palo Alto, CA 94306
Telephone: (650) 331-2030

Archis A. Parasharami (SBN 321661)
aparasharami@mayerbrown.com
575 Market St # 2500
San Francisco, CA 94105
Telephone: (202) 263-3328

Sophia M. Mancall-Bitel (SBN 337002)
smancall-bitel@mayerbrown.com
333 South Grand Avenue, 47th Floor
Los Angeles, CA 90071-1503
Telephone: (213) 229-5137

Daniel E. Jones (*pro hac vice*)
djones@mayerbrown.com
1999 K Street, N.W.
Washington, D.C. 20006
Telephone: (202) 263-3860

*Attorneys for Defendant*
*ALLY FINANCIAL INC.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

MICHAEL MAHONEY, on behalf of himself and all others similarly situated,

Plaintiff,

v.

ALLY FINANCIAL INC.,

Defendant.

Case No. 4:24-cv-2392-HSG

Honorable Haywood S. Gilliam, Jr.

**DEFENDANT ALLY FINANCIAL INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS OR TO TRANSFER**

Date: December 5, 2024
Time: 2:00 p.m.
Location: Courtroom 2, 4th Floor
Trial Date: None
Complaint Filed: April 22, 2024

**TABLE OF CONTENTS**


TABLE OF AUTHORITIES ..... ii

ARGUMENT ..... 1

A. The Court Should Transfer This Action Based On The Forum-Selection Clause. ..... 1

B. This Court Lacks Personal Jurisdiction Over Ally. ..... 5

1. *Calder*, not *Paccar*, controls. ..... 5

2. Mahoney has failed to show that the Court has specific jurisdiction over Ally under *Calder*. ..... 7

a. Ally did not expressly aim any relevant conduct towards California. ..... 7

b. Mahoney's claims do not arise out of or relate to Ally's alleged forum-related activities. ..... 12

CONCLUSION ..... 14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allstar Marketing Group, LLC v. Your Store Online, LLC*,
666 F. Supp. 2d 1109 (C.D. Cal. 2009) .......... 10

*AM Tr. v. UBS AG*,
681 F. App'x 587 (9th Cir. 2017) .......... 8

*AMA Multimedia, LLC v. Wanat*,
970 F.3d 1201 (9th Cir. 2020) .......... 13

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
874 F.3d 1064 (9th Cir. 2017) .......... 11, 12

*Balanzar v. Fid. Brokerage Servs., LLC*,
654 F. Supp. 3d 1075 (S.D. Cal. 2023) .......... 4

*Bergstein v. Parmar*,
2014 WL 12586073 (C.D. Cal. June 23, 2014) .......... 11

*Bristol-Myers Squibb Co. v. Superior Court*,
582 U.S. 255 (2017) .......... 12

*Calder v. Jones*,
465 U.S. 783 (1984) .......... 5, 6, 7

*Cape Flattery Ltd. v. Titan Maritime, LLC*,
647 F.3d 914 (9th Cir. 2011) .......... 2

*Carroll v. J.M. Smucker Co.*,
2023 WL 4053796 (N.D. Cal. June 15, 2023) .......... 8

*Clark-Alonso v. Southwest Airlines Co.*,
440 F. Supp. 3d 1089 (N.D. Cal. 2020) .......... 4

*Craigslist, Inc. v. Kerbel*,
2012 WL 3166798 (N.D. Cal. Aug. 2, 2012) .......... 9

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) .......... 7

*Deveroux v. TT Mktg., Inc.*,
2018 WL 3968249 (E.D. Cal. Aug. 16, 2018) .......... 12

*DFSB Kollective Co. v. Bourne*,
897 F. Supp. 2d 871 (N.D. Cal. 2012) .......... 8

*Doe v. Princess Cruise Lines, Ltd.*,
657 F.3d 1204 (11th Cir. 2011) .......... 4

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
592 U.S. 351 (2021) .......... 13

*Freestream Aircraft (Bermuda) Limited v. Aero Law Group*,
905 F.3d 597 (9th Cir. 2018) .......... 6

*Gruber v. Yelp Inc.*,
55 Cal. App. 5th 591 (2020) .......... 6

*Heiting v. Marriott Int'l, Inc.*,
--- F. Supp. 3d ----, 2024 WL 3751276 (C.D. Cal. Aug. 5, 2024) .......... 6, 7, 8, 9, 13

*Herbal Brands v. Photoplaza, Inc.*,
72 F.4th 1085 (9th Cir. 2023) .......... 8

*Howard v. Goldbloom,*
30 Cal. App. 5th 659 (2018) .......... 4

*Jackson v. Amazon.com, Inc.,*
65 F.4th 1093 (9th Cir. 2023) .......... 4

*Jeske v. Fenmore*,
2008 WL 5101808 (C.D. Cal. Dec. 1, 2008) .......... 9

*Johnson v. Blue Nile, Inc.*,
2021 WL 1312771 (N.D. Cal. Apr. 8, 2021) .......... 9

*Kauffman v. Papa John's Int'l, Inc.*,
2024 WL 171363 (S.D. Cal. Jan. 12, 2024) .......... 10

*Kearney v. Solomon Smith Barney, Inc.,*
39 Cal. 4th 95 (2006) .......... 6

*Lansdown v. Bay View Serv., LLC*,
2023 WL 2934932 (N.D. Cal. Apr. 12, 2023) .......... 2

*Lindora, LLC v. Isagenix Int'l, LLC*,
198 F. Supp. 3d 1127 (S.D. Cal. 2016) .......... 10

*Loomis v. Slendertone Distrib., Inc.*,
420 F. Supp. 3d 1046 (S.D. Cal. 2019) .......... 9

*Mallory v. Norfolk Southern Railway Co.*,
600 U.S. 122 (2023) .......... 8

*Massie v. Gen. Motors Co.*,
2021 WL 2142728 (E.D. Cal. May 26, 2021) .......... 7, 9

*Mikulsky v. Bloomingdale's, LLC*,
713 F. Supp. 3d 833 (S.D. Cal. 2024) .......... 10

*Morales v. Trans. World Airlines, Inc.*,
504 U.S. 374 (1992) .......... 2

*Myers v. Bennett Law Offices*,
238 F.3d 1068 (9th Cir. 2001) ........ 12

*Paccar International, Inc. v. Commercial Bank of Kuwait, S.A.K.*,
757 F.2d 1058 (9th Cir. 1985) ........ 5, 6

*Patel v. Garland*,
596 U.S. 328 (2022) ........ 2

*Rozier v. Dep't of Homeland Security*,
2022 WL 2199938 (C.D. Cal. Mar. 7, 2022) ........ 2

*S.D. v. Hytto Ltd.*,
2019 WL 8333519 (N.D. Cal. May 15, 2019) ........ 11, 12

*Soto v. Miller*,
2023 WL 8850747 (E.D. Wash. Dec. 21, 2023) ........ 2

*Stomp, Inc. v. NeatO, LLC*,
61 F. Supp. 2d 1074 (C.D. Cal. 1999) ........ 10

*Swarts v. The Home Depot, Inc.*,
689 F. Supp. 3d 732 (N.D. Cal. 2023) ........ 10, 12, 13

*Tanner v. Acuchnet Co.*,
2023 WL 8152104 (C.D. Cal. Nov. 20, 2023) ........ 6

*Toyo Tire v. Mandala*,
2020 WL 6153110 (C.D. Cal. Sept. 10, 2020) ........ 10

*United States v. Luong*,
471 F.3d 1107 (9th. Cir. 2006) ........ 6

*Walden v. Fiore*,
571 U.S. 277 (2014) ........ 5, 6, 9, 11, 12, 13

**Statutes and Rules**

28 U.S.C. § 1404(a) ........ 1, 5

Fed. R. Civ. P. 4(k)(2) ........ 11

Mahoney's opposition streamlines the issues before this Court by giving it a simple way to decide this case: enforcing the forum-selection clause in Mahoney's agreement with Ally and transferring this case to the District of Utah. It is undisputed that Mahoney agreed to the Ally Bank Deposit Agreement, including its forum-selection clause. Mahoney does not deny doing so—nor does he deny that the forum-selection clause is valid and enforceable. Instead, Mahoney argues only that the clause does not apply to his claims, insisting that this is not a "lawsuit regarding [his] account." Decl. of Jacqueline Lemma Ex. 2 § I.D. But the face of Mahoney's complaint proves otherwise—as we show below, the central basis for Mahoney's claims "regard[]" Mahoney's opening and using his Ally account on Ally's website.

Because the Court can and should transfer the case, it need not decide whether it has personal jurisdiction over Mahoney's claims. *See* Mot. 15 & n.8. But if the Court does choose to address personal jurisdiction, Mahoney's arguments on that score are flatly wrong. As detailed below, Mahoney cannot show that Ally expressly aimed the challenged conduct at California in particular, or that Mahoney's claims arise out of or relate to Ally's California contacts. That failure is fatal to Mahoney's attempt to proceed in this Court. Mahoney contends that it is enough for personal jurisdiction that he accessed the website from California, but under binding Supreme Court and Ninth Circuit precedent, that is insufficient, because it is Ally's suit-related conduct that matters.

## ARGUMENT

### A. The Court Should Transfer This Action Based On The Forum-Selection Clause.

Mahoney doesn't deny that he agreed to a forum-selection clause requiring him to bring "[a]ny lawsuit regarding [his] account . . . in a proper court in the State of Utah." Lemma Decl. Ex. 2 § I.D. And he also doesn't challenge Ally's explanation that

(1) transfer under 28 U.S.C. § 1404(a) is the proper mechanism to enforce

the forum-selection clause;

(2) the forum-selection clause is valid and enforceable under federal law;

(3) Mahoney bears the heavy burden of showing exceptional circumstances preventing enforcement of his agreement; and

(4) Judge Donato has previously enforced Ally Bank's forum-selection clause under these standards and transferred a case to the District of Utah.

Mot. 15-18. By not contesting any of these points, Mahoney has conceded them. *See, e.g.*, *Lansdown v. Bay View Serv., LLC*, 2023 WL 2934932, at *4 (N.D. Cal. Apr. 12, 2023) ("[A] failure to respond in an opposition to an argument constitutes waiver or abandonment, and thus concedes the argument.") (quotation marks omitted); *Rozier v. Dep't of Homeland Security*, 2022 WL 2199938, at *3 (C.D. Cal. Mar. 7, 2022) (collecting cases holding that a plaintiff waives or abandons an issue by not responding to an argument raised in the defendant's motion).

Instead, Mahoney's only argument against transfer is to contend that he has not filed a "lawsuit regarding [his] account" with Ally. Opp. 16-19. But that argument is impossible to square with the plain meaning of "regarding" or Mahoney's own complaint.

The term "regarding" is expansive: that term "'in a legal context generally has a broadening effect, ensuring that the scope of a provision covers not only its subject but also matters *relating to* that subject.'" *Soto v. Miller*, 2023 WL 8850747, at *4 & n.30 (E.D. Wash. Dec. 21, 2023) (quoting *Patel v. Garland*, 596 U.S. 328, 338-39 (2022)) (emphasis added). The similar phrase "relating to" is sweeping as well. The Supreme Court has explained that the "ordinary meaning of those words is a broad one—to stand in some relation; to have bearing or concern; to pertain; to refer; to bring into association with or connection with." *Morales v. Trans. World Airlines, Inc.*, 504 U.S. 374, 383 (1992); *cf. Cape Flattery Ltd. v. Titan Maritime, LLC*, 647 F.3d 914, 922 (9th Cir. 2011) (noting that the phrase "relating to" is significantly broader

than "arising under," and that the absence of "relating to" language in an arbitration clause means that it covers a "much narrower scope of disputes").

Mahoney's own complaint leaves no doubt that his allegations "relate," "pertain," and "refer" to his Ally account—which is to say, they "regard[]" the account. The core of Mahoney's allegations is that Mahoney's personal information was captured *when he opened and used his Ally account* during his visits to the Ally website. Specifically, Mahoney alleges that his information was captured when he "searched for and browsed financial information, *opened an Ally account*, and *used Ally's online financial services* (i.e. online banking)." Compl. ¶ 3 (emphasis added). Notably, paragraph 3 of the complaint is the only paragraph containing allegations about Mahoney's own use of the website, and those allegations confirm that Mahoney's claims are intertwined with his creation and use of his Ally account.

Moreover, the complaint acknowledges more generally that individuals can use Ally's website to "open an Ally account" or "use Ally's online financial services." Compl. ¶¶ 26, 30-31. Indeed, the complaint includes several screenshots attempting to link the creation and use of an Ally account to the entry of the type of personal financial information that Mahoney alleges was captured when he used the website. *Id.* ¶¶ 30-31; *see also id.* ¶¶ 17-21 (discussing the definitions of "personally identifiable financial information" under federal and California law). Taken as a whole, these allegations leave no doubt that Mahoney has brought a "lawsuit regarding [his] account." Lemma Decl. Ex. 2 § I.D.

Mahoney's argument that some putative class members will have browsed the Ally website without opening or creating an Ally account (Opp. 18-19 & n.8) is irrelevant. Mahoney's *own* claims are based on his creation and use of an Ally account on the website and the information he allegedly entered during those processes. Moreover, Mahoney cannot have it both ways, relying on his allegations about his use of his Ally account to support his claims while running away from them in an effort to avoid the forum-selection clause.

Finally, the cases Mahoney cites (at Opp. 17-18) are readily distinguishable. The forum-selection clause here covers any lawsuit "regarding [Mahoney's] *account*"; it is not limited to lawsuits based on the contract (the Ally Deposit Agreement) itself. By contrast, the clauses in Mahoney's two CIPA cases were limited to claims based on the *contract*. For example, in Mahoney's principal case, *Clark-Alonso v. Southwest Airlines Co.*, 440 F. Supp. 3d 1089 (N.D. Cal. 2020), the forum-selection clause was contained in an airline's frequent flyer program rules and was limited to "'[a]ny and all matters arising out of or relating to the [frequent flyer] program rules and/or the subject matter hereof.'" *Id.* at 1092. That limitation is why the Court concluded that the clause did not extend to a CIPA claim, because the "claim [did] not require interpretation of the [rules]" or a "determination of whether [the parties] performed under the [rules]." *Id.* at 1094. Similarly, in Mahoney's other CIPA case, the choice-of-law clause at issue was explicitly limited to the "Agreement [containing the choice-of-law clause] and its enforcement." *Balanzar v. Fid. Brokerage Servs., LLC*, 654 F. Supp. 3d 1075, 1081 (S.D. Cal. 2023).

The remaining cases that Mahoney cites involve arbitration clauses, and they are all inapposite too. In *Jackson v. Amazon.com, Inc.*, the applicable arbitration clause was limited to claims "'arising out of or relating in any way *to this Agreement*.'" 65 F.4th 1093, 1101 (9th Cir. 2023) (emphasis added). That emphasized language was why the Ninth Circuit observed that "[t]o be arbitrable, the dispute must relate to the contract." *Id.* And in *Howard v. Goldbloom*, the plaintiff's breach of fiduciary claims based on his status "as a company stockholder" did not fall within the scope of his agreements to arbitrate claims related to his employment. 30 Cal. App. 5th 659, 663 (2018); *see also Doe v. Princess Cruise Lines, Ltd.,* 657 F.3d 1204, 1219-20 (11th Cir. 2011) (cited at Opp. 18) (claims based on sexual assault allegations were not covered by cruise ship crew member's agreement to arbitrate claims "arising out of or connected with the Crew Agreement, these terms, or services performed for the Company"). Here, by contrast, the forum-selection clause is not limited to contract

claims. The plain language of the forum-selection clause applies whenever a lawsuit "regard[s]" a customer's account, and for the reasons explained above, Mahoney's claims easily clear that modest bar.

In short, Mahoney's attempts to distance his allegations from his Ally account fail. The forum-selection clause covers this lawsuit, and the Court should therefore enforce the clause and transfer this case to the District of Utah.

### B. This Court Lacks Personal Jurisdiction Over Ally.

The Court need not consider whether it has personal jurisdiction because it can readily transfer the case under Section 1404(a) based on the forum-selection clause. But if the Court does reach the personal jurisdiction issues, it should conclude that it lacks personal jurisdiction over Ally—an issue on which Mahoney bears the burden.

To begin with, Mahoney concedes that Ally is not subject to general jurisdiction in California. Opp. 3 n.2. Accordingly, Mahoney must show that specific personal jurisdiction exists here. But he cannot make that showing. Mahoney makes two categories of arguments: (1) the *Calder* effects test for purposeful direction does not apply; and (2) if *Calder* does apply, it is satisfied. Mahoney is wrong on both counts.

#### 1. *Calder*, not *Paccar*, controls.

Citing *Paccar International, Inc. v. Commercial Bank of Kuwait, S.A.K.*, 757 F.2d 1058 (9th Cir. 1985), Mahoney insists that the purposeful direction test from *Calder v. Jones*, 465 U.S. 783 (1984), does not apply to his tort claims because the alleged wiretapping occurred in California. Opp. 3-6. But Mahoney is conflating two separate inquiries: (1) where the plaintiff experienced the alleged tort or a third party allegedly captured his information; and (2) where the defendant *Ally*'s suit-related conduct took place.

Under controlling Supreme Court precedent, only the second question is relevant to specific jurisdiction. A decade ago, the Supreme Court held that "the ***defendant's*** suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (emphasis added)). In other

words, an allegation that Mahoney experienced the alleged injury in California is not enough. As the Court reiterated, "it is the defendant, ***not the plaintiff or third parties***, who must create contacts with the forum State." *Id.* at 291 (emphasis added).

It is undisputed that Ally is not located in California and did not design, develop, operate, or configure Ally's website in California. *See* Mot. 4. *Paccar* is therefore inapposite because Mahoney has not alleged that Ally took actions within California to commit an intentional tort there. One of Mahoney's own cases confirms that applying *Calder* rather than *Paccar* "makes more sense when dealing with out-of-forum [alleged] tortfeasors." *Freestream Aircraft (Bermuda) Limited v. Aero Law Group*, 905 F.3d 597, 604 (9th Cir. 2018) (cited at Opp. 3-4). And that is why courts considering internet-based tort claims against out-of-state website operators—including CIPA claims and similar session replay and Meta Pixel claims—routinely apply the *Calder* purposeful direction test. *See* Mot. 2, 9 (collecting cases); *see also*, *e.g.*, *Heiting v. Marriott Int'l, Inc.*, --- F. Supp. 3d ----, 2024 WL 3751276, at *3-5 (C.D. Cal. Aug. 5, 2024) (applying *Calder* to dismiss CIPA claim against out-of-state website operator for lack of personal jurisdiction).

Tellingly, most of the cases Mahoney cites (at Opp. 4-5) *do not involve personal jurisdiction at all.*[1] As for his remaining case, *Kearney v. Solomon Smith Barney, Inc.*, the California court's one-paragraph discussion of personal jurisdiction concluded that the company was subject to both general and specific personal jurisdiction based on the company's "business activity in the state." 39 Cal. 4th 95,

[1] *See*, *e.g.*, *Tanner v. Acuchnet Co.*, 2023 WL 8152104, at *6 (C.D. Cal. Nov. 20, 2023) (CIPA violation occurs at the time "the contents of a wire communication are captured or redirected in any way"); *Gruber v. Yelp Inc.*, 55 Cal. App. 5th 591, 605, 610-11 (2020) (deciding merits issue that CIPA applies when a defendant "records its voice but not the voice of the other party to the call"); *United States v. Luong*, 471 F.3d 1107, 1108 (9th. Cir. 2006) (criminal case holding that the government may obtain a wiretap from a district court for a "mobile phone used by [defendant] when that phone and its area code were located outside of the court's territorial jurisdiction but the government's listening post was within it").

103-04 (2006). That overbroad approach to general jurisdiction predates the Supreme Court's decision in *Daimler AG v. Bauman*, 571 U.S. 117, 138 (2014), which expressly rejected that approach. And the case is readily distinguishable on specific jurisdiction, because it involved alleged wiretapping of telephone calls between the brokerage company and its California clients related to California business transactions—a far cry from operating and configuring a website generally accessible nationwide.

In short, *Calder* supplies the relevant test for determining whether Ally is subject to specific jurisdiction for Mahoney's claims. As we discuss next, he cannot meet that test.

**2. Mahoney has failed to show that the Court has specific jurisdiction over Ally under *Calder*.**

**a. Ally did not expressly aim any relevant conduct towards California.**

As Ally explained in its motion (at 10), the "express aiming" prong of the *Calder* test is what is at issue in this case. Mahoney's arguments about the other two prongs of the test—an intentional act and the foreseeability of alleged harm in California—are not at issue, nor is the reasonableness of jurisdiction if the Court concludes that the requirements of constitutional due process have been satisfied. *See* Opp. 6, 13-14, 16; *see also*, *e.g.*, *Heiting*, 2024 WL 3751276, at *3 ("[T]his case turns on prong two: whether Heiting can establish the 'express aiming' element."); *Massie v. Gen. Motors Co.*, 2021 WL 2142728, at *4 (E.D. Cal. May 26, 2021) ("Plaintiffs' allegations regarding Defendants' website are insufficient to establish an express aim at California.").

Ally explained in its motion (at 10-11) and supporting declarations that Ally's operation and configuration of its generally accessible website is in no way expressly aimed at California. Mahoney does not dispute any part of our factual showing, but raises several arguments in an effort to establish express aiming. None succeeds.

Mahoney first argues that Ally's website is "highly interactive and commercial in nature." Opp. 7-8. But the fact "'that a website is commercial in nature and interactive does not necessarily mean there is personal jurisdiction.'" *Carroll v. J.M. Smucker Co.*, 2023 WL 4053796, at *4 (N.D. Cal. June 15, 2023) (quoting *DFSB Kollective Co. v. Bourne*, 897 F. Supp. 2d 871, 881 (N.D. Cal. 2012)); *see also* Mot. 11-12. Even "in the context of an interactive website, operation of the website alone does not constitute express aiming—the plaintiff needs to allege 'something more.'" *Heiting*, 2024 WL 3751276, at *4 (citing *Herbal Brands v. Photoplaza, Inc.*, 72 F.4th 1085, 1091-92 (9th Cir. 2023)).

Mahoney has failed to allege "something more" here. Mahoney notes that Ally "is registered to do business in California," Opp. 9, but that observation cannot support specific jurisdiction because it has nothing to do with his claims, which are based on the operation of Ally's website. And unlike the Pennsylvania statute recently considered by the Supreme Court in *Mallory v. Norfolk Southern Railway Co.*, 600 U.S. 122 (2023), California's registration statute does not condition an out-of-state company's registration to do business on consent to personal jurisdiction in the State. *See*, *e.g.*, *AM Tr. v. UBS AG*, 681 F. App'x 587, 588-89 (9th Cir. 2017) ("California does not require corporations to consent to general personal jurisdiction in that state when they . . . register to do business.").

Mahoney next cites revenue figures drawn from Ally's most recent 10-K Report showing that 39.2% of Ally's consumer mortgages are located in California. Opp. 9-10. But that too has nothing to do with the operation and configuration of Ally's website—much less the use and configuration of session replay and Meta Pixel technologies in particular. And rather than show express aiming, these statistics simply reflect the observation that California is one of the nation's largest markets.

Tellingly, courts considering similar claims have routinely rejected the argument that California's relative size or a website operator's large customer base of Californians means that a website operator is subject to specific jurisdiction in

California. For example, in *Massie*, the Court held that allegations that Californians "'form a significant portion of GM's customer base'" and that "'Defendants anticipated, desired, and achieved a substantial California viewer base'" were insufficient, because they did not show that the website had a California-specific focus or was tailored to Californians in particular. *Massie*, 2021 WL 2142728, at *5-6.[2] The same is true here, in sharp contrast to several of the cases that Mahoney cites.[3] At most, Mahoney's arguments show that it is foreseeable that Californians will access Ally's website, but that foreseeability is not enough under *Walden* or Ninth Circuit precedent applying it. *See* Mot. 12-13.

For much the same reasons, Ally's California-specific legal disclosures on its website (*see* Opp. 10) do not satisfy the express aiming requirement. The Court in *Massie* rejected this argument too: while the plaintiffs claimed "that GM knows it is marketing to Californians because its websites contain disclaimers related to California law," that too showed only that it is foreseeable that Californians would access the website and not that there was any suit-related "conduct by GM aimed at California." 2021 WL 2142728, at *5-6.

---

[2] *See also*, *e.g.*, *Heiting*, 2024 WL 3751276, at *4 (holding that "the Court can disregard Heiting's argument that 'Marriott does a substantial amount of business in California' because "Marriott's broader business contacts with California are unrelated to Heiting's alleged privacy-related harm and Heiting does not show (and cannot show) any relationship between Marriot's general business in California and her cause of action"); *Johnson v. Blue Nile, Inc.*, 2021 WL 1312771, at *3 (N.D. Cal. Apr. 8, 2021) (rejecting specific jurisdiction where plaintiffs alleged that "Defendants knew that significant number of Californians would visit Blue Nile's website, because they form a significant portion of Blue Nile's customer base").

[3] *See Loomis v. Slendertone Distrib., Inc.*, 420 F. Supp. 3d 1046, 1068-70 (S.D. Cal. 2019) (holding that the defendant "expressly targeted California through capitalizing on its influential fitness community," with advertisements like "'We put The Flex Belt in the hands of the best Trainers in Los Angeles"); *Jeske v. Fenmore*, 2008 WL 5101808, at *4-5 (C.D. Cal. Dec. 1, 2008) (defendant promoted beauty pageants using California-specific trademarks like "'Ms. California,' 'Ms. Golden State,' and 'Ms. California Coast,'" titles that can only be sought by "California residents"); *Craigslist, Inc. v. Kerbel*, 2012 WL 3166798, at *1, *5 (N.D. Cal. Aug. 2, 2012) (the defendant operated a website "designed to enable illegitimate uses of craigslist" and specifically "offer[ed] posting services in the Bay Area section of craigslist").

The sole case that Mahoney cites on this point is easily distinguishable. There, the defendant physically sold products that infringed the plaintiff's trademarks into California and extensively promoted those products with California-specific marketing, including "hold[ing] training workshops, promotional tours, and annual conferences in California" and providing its California marketers with materials containing the allegedly infringing trademarks. *Lindora, LLC v. Isagenix Int'l, LLC,* 198 F. Supp. 3d 1127, 1133-34, 1139 (S.D. Cal. 2016) (cited at Opp. 10).

Moreover, as Ally explained in its motion (at 14-15), cases involving the use of a website to facilitate the defendant's sales of physical products into the forum are readily distinguishable, because Ally is an *online-only* bank that operates a website that is generally accessible nationwide. Without acknowledging that distinction, Mahoney relies on several other inapposite cases involving sales of physical products into the forum.[4]

Ally's motion also explained why the complaint's allegations involving a nationwide network of Allpoint ATMs neither relate to this case nor demonstrate express aiming. Mot. 13. The same is true of Mahoney's new arguments about Ally's partnerships with organizations "to provide homeownership tools" or financial literacy education. Opp. 10. Mahoney does not and cannot explain how home

---

[4] *See, e.g.*, *Kauffman v. Papa John's Int'l, Inc.*, 2024 WL 171363, at *4 (S.D. Cal. Jan. 12, 2024) (website was "integrated" with California retail locations and used to facilitate sales of pizzas to Californians); *Mikulsky v. Bloomingdale's, LLC*, 713 F. Supp. 3d 833, 841-42 (S.D. Cal. 2024) (website facilitated sales of clothes and other physical products into the forum and was connected to the operation of brick-and-mortar locations in California); *Swarts v. The Home Depot, Inc.*, 689 F. Supp. 3d 732, 742-43 (N.D. Cal. 2023) (plaintiff's claims were based on the alleged interception of an online chat about a physical product sold to the plaintiff in California); *Toyo Tire v. Mandala*, 2020 WL 6153110, at *5 (C.D. Cal. Sept. 10, 2020) (holding that defendant expressly aimed its conduct at California by selling counterfeit goods in the state); *Allstar Marketing Group, LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1115-1122 (C.D. Cal. 2009) (exercising personal jurisdiction over a defendant that regularly sold infringing products in the forum state); *Stomp, Inc. v. NeatO, LLC*, 61 F. Supp. 2d 1074, 1075-76 (C.D. Cal. 1999) (alleging the defendant sold goods that infringed on plaintiffs' patent via the Internet to California citizens).

ownership tools have any connection to the use of Ally's website—much less his claims. In all events, the materials Mahoney attaches make clear that these partnerships are not limited to California and cannot demonstrate express aiming. Scott Decl. Exs. G-J.

Finally, the other wiretapping cases that Mahoney cites in support of his express aiming arguments are inapposite. The cases involve the wholly distinct circumstance of the defendant taking some affirmative action in the forum, either to effectuate the alleged wiretapping or to use the results of the wiretapping in connection with the plaintiff there. In *Hytto*, for example, the defendant sold vibrators to customers in the United States that required them to download and install on their smartphones an application (the "Body Chat app") to access the vibrator's "entire functionality." *S.D. v. Hytto Ltd.*, 2019 WL 8333519, at *1 (N.D. Cal. May 15, 2019) (cited at Opp. 12-13).[5] That app paired the vibrator to the customer's smartphone, allowed "remote" partners to control the vibrator over "long distances," and contemporaneously transmitted to the defendant sensitive information like vibrator "intensity levels" coupled with identifying email addresses. *Id.* Hytto's intimate and personal connection to individuals in the forum state is wholly absent here. And in *Bergstein*, the New Jersey defendant made audio recordings of the conversations of his California business associate "*for the purpose of extorting money from [him]* in California." *Bergstein v. Parmar*, 2014 WL 12586073, at *4 (C.D. Cal. June 23, 2014) (emphasis in original) (cited at Opp. 12-13).

Notably, these cases rely on a theory of "individualized targeting" of the plaintiff that is absent here—and that in any event is no longer valid after *Walden*. For example, in *Bergstein*, the defendants targeted their wrongful conduct at, and were motivated by a desire to harm, a specific California resident. *Bergstein*, 2014

---

[5] Notably, *Hytto* was evaluating personal jurisdiction under Rule 4(k)(2), which looks to a foreign (i.e., non-U.S.) defendant's contacts with the United States ***as a whole*** when that defendant is not subject to personal jurisdiction in any state. *See Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1072 (9th Cir. 2017).

WL 12586073, at *4. And in *Hytto*—which, to say the least, involved idiosyncratic facts—the court concluded that the foreign defendant had expressly aimed its interception of the vibrator users' personal information at the United States because the defendant was "aware of its significant American customer base" and "targeted its wrongful conduct at [those U.S.] customers." 2019 WL 8333519, at *4. "In light of the [Supreme] Court's instructions in *Walden*," however, "the mere satisfaction of the [individualized targeting] test" relied upon in *Hytto* "is insufficient to comply with due process," because courts "must look to the defendant's 'own contacts' with the forum, not to the defendant's knowledge of a plaintiff's connection to the forum." *Axiom*, 874 F.3d at 1070. The pre-*Walden* Ninth Circuit case on which Mahoney relies, *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1075 (9th Cir. 2001) (cited at Opp. 12), is no longer good law for the same reason. *See*, *e.g.*, *Deveroux v. TT Mktg., Inc.*, 2018 WL 3968249, at *5 (E.D. Cal. Aug. 16, 2018) (explaining that *Myers* "does not aid" the plaintiff because it applied a "direct targeting" theory that "is no longer sufficient to meet the 'express aiming' requirement of purposeful direction").

In short, Mahoney fails to show that Ally has "expressly aimed" the operation of its website—let alone its use of session replay and Meta Pixel technologies—towards California in a manner sufficient to confer specific jurisdiction.

**b. Mahoney's claims do not arise out of or relate to Ally's alleged forum-related activities.**

For similar reasons, Mahoney's arguments (Opp. 14-15) that his claims arise out of or relate to conduct by Ally in or aimed at California—something that is required under *Walden* and *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 264 (2017)—miss the mark.

Mahoney again relies on *Hytto* and *Swarts v. The Home Depot, Inc.*, 689 F. Supp. 3d 732 (N.D. Cal. 2023), but those cases are distinguishable for the reasons discussed above (at 10-12 & n.4). Unlike in *Swarts*, for example, Mahoney's use of the website is not related to Ally's sale of any physical product in California. Judge

Tigar made clear that the connection between the use of the website and a physical product sale was crucial to his holdings on both express-aiming and the suit-related inquiries, noting that the plaintiff "sufficiently alleges that Home Depot *sold a physical product* to him via its interactive website" and that the plaintiff's "claim that Home Depot recorded online chat conversations *concerning products he had purchased* without his consent relates to Home Depot's connection with the forum." 689 F. Supp. 3d at 742-43 (emphases added).

Mahoney also notes that Meta is a California corporation (Opp. 15), but as discussed above (at 5-6), *Walden* requires that the defendant itself, not "third parties," create the requisite "contacts with the forum State." *Walden*, 571 U.S. at 284. Mahoney's observation also proves far too much; under his view, any claim related to the use of Meta Pixel technology against any defendant anywhere would be subject to specific jurisdiction in California, regardless of where the defendant is located or where the defendant's relevant actions took place. Mahoney points to no court that has accepted that overly expansive view. On the contrary, Judge Staton recently rejected a similar argument as inconsistent with *Walden* and post-*Walden* Ninth Circuit precedent, explaining that "third party connections to the forum"—there, Marriott's partnership with a California-based website vendor that the plaintiff alleged intercepted his online chats—could not be attributed to Marriott. *Heiting*, 2024 WL 3751276, at *4 (citing *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1211 n.6 (9th Cir. 2020)).

Finally, Mahoney notes that the Supreme Court in *Ford* held that the "arise out of or relate to" standard does not require "but-for" causation. Opp. 14-15 (citing *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 361 (2021)). Ally acknowledged as much in its motion (at 13-14). But Mahoney's overbroad reading of *Ford* glosses over the Supreme Court's admonition that "the phrase 'relate to'" continues to "incorporate[] real limits, as it must to adequately protect defendants foreign to a forum." *Ford*, 592 U.S. at 362; *see* Mot. 14. If Mahoney were correct that

his use of Ally's broadly accessible website is enough to establish a connection between his claims and Ally's general business activities in California, then there are no limits on specific jurisdiction at all—much less "real" ones.

## CONCLUSION

Ally respectfully requests that the Court transfer this case to the District of Utah or, in the alternative, dismiss the complaint for lack of personal jurisdiction.

Dated: November 13, 2024

MAYER BROWN LLP

By: /s/ Anthony J Weibell
Anthony J Weibell
Archis A. Parasharami
Sophia M. Mancall-Bitel
Daniel E. Jones

Attorneys for Defendant Ally Financial Inc.